Mr. Justice DAVIS,
 

 after stating the case, delivered the opinion of the court.
 

 It is not the province of this court to interfere with the policy of the revenue laws of the States, nor with the interpretation given to them by their courts. Arkansas has the right to determine the manner of levying and collecting taxes, and can declare that the particular tract of land shall he chargeable with tbe taxes, no matter who is the owner, or in whose name it is assessed and advertised, and that an erroneous assessment does not vitiate a sale for taxes.
 

 Of course, the property must, under the compact, he taxable ; but if it is, the mode of enforcing payment of taxes is wholly within legislative control. If, therefore, the lands in dispute could be taxed, the decision of the Supreme Court of the State is conclusive that the assessment, sale, and confirmation were regular, and divested the title derived through the heirs of Harrell. The .taxability of the lands is, then, the only question which we are authorized to consider and determine.
 

 The plaintifFs in error insist that the State had no power to impose atax on them until the donation entry was actually confirmed and the patent had emanated. It is conceded that the power had been exercised, from an early period in
 
 *218
 
 the history of the State, to levy and collect a tax upon lands as soon as entered, and not to wait for the emanation of the patent, — a practice that has obtained in nearly all the Western States, whose admission was under a compact similar to that with Arkansas.
 

 Arkansas covenanted to abstain from taxation of the public lands within her limits, and to refrain from legislation that should impede the Federal Government in disposing of them, or interfere with the regulations of Congress for the security of titles. It is clear that the government has not been hindered in selling them, nor Congress obstructed in securing titles; but it is claimed the contract has been violated, because these lands, when taxed, were owned by the United States. In no just sense can lands be said to be public lands after they have been entered at the land office and a certificate of entry obtained. If public lands before the entry, after it they are private property. If subject to sale, the government has no power to revoke the entry and withhold the patent. A second sale, if the first was authorized by law, confers no right on the buyer, and is a void act.
 

 According to the well-known mode of proceeding at the land offices (established for the mutual convenience of buyer and seller), if the party is entitled by law to enter the land, the receiver gives him a certificate of entry reciting the facts, by means of which, in due time, he receives a patent. The contract of purchase is complete when the certificate of entry is executed and delivered, and thereafter the land ceases to be a part of the public domain. The government agrees to make proper conveyance as soon as it can, and in the meantime holds the naked legal fee in trust for the purchaser, who has the equitable title. As the patent emanates directly from the President, it necessarily happens that years elapse, before, in the regular course of business in the General Land Office, it can issue; and if the right to tax was in abeyance during this time it would work a great hardship to the State; for the purchaser, as soon as he gets his certificate of entry, is protected in his proprietary interest, can take possession, and make valuable and lasting improvements, which it
 
 *219
 
 would be difficult to separate from tire freehold for the purpose of taxation. If it was the purpose of the acts of Congress, by which the now States were admitted into the. Union, to prohibit taxation until the patent was granted, the national authority would never have suffered, without questioning it, the universal exercise of the power to tax on the basis of the original entry.
 

 This question was fully considered by this court in
 
 Carroll
 
 v.
 
 Stafford,
 

 *
 

 and the views we have presented only reaffirm the doctrines of that case.
 

 But it is insisted that there is a difference between a cash and a donation entry — that the one may be complete when the money is paid, but the other is not perfected until it is confirmed by the General Land Office and the patent issued.
 

 That Congress has the entire control of the public lands, can dispose of them for money, or donate them to individuals or classes of persons, cannot be questioned. If the law on the subject is complied with, and the entry conforms to it, it is difficult to see why the right to tax does not attach as well to the donation as to the cash entry. In either case when the entry is made and certificate given the particular land is segregated from the mass of public lands and becomes private property. In the one case the entry is complete when the money is paid; in the other when the .required proofs are furnished. In neither can the patent be withheld if the original entry was lawful.
 

 The power to tax exists as soon as the ownership is changed, and this is effected when the entry is made on the terms and in the modes allowed by law. If this were not; so, those who, through the bounty of Congress, get a title to the soil,
 
 without
 
 money, would enjoy higher privileges and be placed on a better footing than the great body of persons who, by the invitation of the government, purchase lands
 
 with
 
 money. Such a discrimination could never have been contemplated by Congress. /
 

 These principles are well illustrated in the case at bar.
 
 *220
 
 The heirs of Harrell, by means of the Cherokee treaty, had a claim to two quarter sections of land in Arkansas. If' they furnished.proof to the register and receiver of the proper land office of the settlement and removal of their father, and it was accepted and the claim allowed, then they had an equal right to purchase the lands in question with this claim as ■with money. The claim
 
 was
 
 allowed, the selections made, and a certificate of entry given, and it was their duty to see that the taxes were paid. It is true, that the entry might be set aside at 'Washington; but this condition attaches to all entiles of the public lands.
 

 They took upon themselves the risk of confirmation, and perilled their title when they suffered the lands to be sold for non-payment of taxes. It does not appear from the record why the patent was so long delayed; but the claim was finally approved on the original proofs, and the patent, when issued, related back to the original entry. The lands were, therefore, under the laws of the State, properly chargeable with taxes from the date of the first entry, in 1830.
 

 The judgment of the Supreme Court of Arkansas is
 

 AeEIRMBD.
 

 *
 

 3 Howard, 450.