[No. 7548.   Decided February 23, 1909.]

## DOUGALD McALLISTER, *Respondent*, v. OKANOGAN COUNTY, *Appellant*.[1]

PUBLIC LANDS — SETTLERS — RIGHT OF OCCUPANCY — UNSURVEYED LAND—STATUTES—CONSTRUCTION.   Vol. 23 Stat. 321, prohibiting the unlawful occupancy of the public domain was not intended to prevent actual *bona fide* settlers from inclosing an entryman's proportion of unsurveyed land.

SAME—GRANTS—RIGHTS OF WAY—HIGHWAYS — SETTLERS ON UN-SURVEYED LAND—POSSESSORY RIGHTS.   U. S. Rev. Stats., § 2477, granting rights of way over the unreserved public lands of the United States, and Laws 1903, p. 155, authorizing boards of county commissioners to accept by resolution such Congressional grant, do not amount to a grant *in praesenti*, as to unsurveyed lands in the possession of a *bona fide* settler; but the grant is held in abeyance until a highway is established by law (overruling *Okanogan County v. Cheetham*, 37 Wash. 682).

SAME—EMINENT DOMAIN.   A *bona fide* settler in peaceable possession of an entryman's proportion of unsurveyed public lands, who had enclosed the lands and made improvements, has such an interest in the lands as to preclude the opening of a county road across the same without condemning his interests.

Appeal from an order of the superior court for Okanogan county, Kellogg, J., entered June 6, 1908, granting a temporary injunction restraining the opening of a county road, after a hearing before the court.   Affirmed.

*William C. Brown*, for appellant.

*P. D. Smith*, for respondent.

[1]Reported in 100 Pac. 146.

FULLERTON, J.—In the early part of the year 1901, the respondent, Dougald McAllister, who was then a qualified entryman under the homestead laws of the United States, settled upon certain unsurveyed and unappropriated public lands, in Okanogan county, equal in quantity to about one hundred and sixty acres, with the intent of entering the lands as a homestead when the government surveys should be extended over them. Shortly after making his settlement, the respondent enclosed the lands with a substantial fence, and since then has resided on the lands continuously, cultivating the same and raising crops thereon.

In the spring of 1907, the county commissioners of Okanogan county directed the county engineer to lay out and survey a route for a county road between certain designated points in that county. The county engineer surveyed the road as directed, and in doing so extended his surveys across the land enclosed by the respondent. On the return of the field notes of the survey to the commissioners, that body by resolution, passed pursuant to the statute of March 14, 1903 (Laws 1903, p. 155), declared the lands for thirty feet on each side of the line marked by the survey to be a public highway and county road, to be known as the Riverside and Tunk Creek county road. The resolution further recited that the respondent had erected and was maintaining illegal fences on the public lands of the United States which materially interfered with the establishment of the proposed public way, and ordered that one A. F. Leach, a special agent of the United States, be requested to cause the immediate removal of such illegal fences. Later on the county proceeded to open the road, and expended in construction work approximately $1,200, opening the same from its eastern terminus westerly to a point near respondent's enclosure. On its attempting to proceed through the enclosure, the respondent brought the present action to enjoin it from so doing.

At the hearing it was shown that the road as constructed had destroyed an irrigation ditch which the respondent had

constructed some seven years before; also, that its further construction would pass through a place the respondent had reserved for a reservoir site for irrigating purposes, and render it unfit for such purposes, and would require much additional fencing; but no estimate was made by any of the witnesses as to the amount the respondent would be damaged in dollars and cents by the construction of the road across his enclosure. At the commencement of his action, the respondent obtained a temporary restraining order, coupled with an order to show cause why a temporary injunction should not be issued pending the final determination of the action. On the hearing had in pursuance of the order, the foregoing facts appeared, whereupon the court issued a temporary injunction enjoining the county from opening the road across the respondent's enclosure, and the county has appealed.

The county asserts the right to establish a public road across the enclosure of the respondent by virtue of § 2477 of the revised statutes of the United States, which grants a right of way over the unreserved public lands of the United States for the construction of highways, and the act of the legislature of the state of Washington authorizing the boards of county commissioners of the several counties of the state to accept by resolution the grant therein contained. Laws 1903, p. 155. If we may be permitted to judge from the resolution of its board of county commissioners declaring the route surveyed to be a public highway, the first thought of the county was that the settlement of the respondent, being in advance of the government surveys, was without right and his enclosure unlawful and subject to be removed by the government officers on complaint of any person whose rights were affected thereby. Its learned counsel, however, argues the case in this court upon another theory. He contends that the grant of Congress of a right of way over the public lands for the construction of a highway is a grant *in praesenti*, and imports immediate transfer of interest, so that when a highway is once definitely located the title attaches as from the date of the act, cutting

off all intermediate interests; and in the present case, since the respondent settled upon the land in question after the passage of this act of Congress, his interests are subordinate thereto and subject to the right of the county to establish a highway across the land enclosed by him by resolution as provided for by statute.

But we cannot think either of these positions tenable. A settler upon the public land in advance of the surveys who encloses no greater area than the land laws permit him to enter is not a trespasser, nor is his enclosure unlawful. On the contrary, from the very beginning of the government such settlements have been encouraged. In all of the great grants of the public domain made by Congress, the rights of those on the lands in advance of the grants, whether on the surveyed or unsurveyed lands, have been protected; and even in the reservations of lands made for the benefit of so cherished an object as the common schools, it was provided that, when by the extension of the surveys it should be found that settlement had been made on the reserved sections, other lands should be selected in lieu thereof, and the settler permitted to enter the lands as if the same were unappropriated public lands. The act of February 25, 1885 (23 Stat. at Large, 321), to prevent unlawful occupancy of the public domain, was not intended to prevent actual bona fide settlers from occupying and enclosing an entryman's proportion of the public domain. In the language of the Supreme Court of the United States in *Cameron v. United States*, 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459:

"The act of Congress . . . was passed in view of a practice which had become common in the Western Territories of enclosing large areas of lands of the United States by associations of cattle raisers, who were mere trespassers, without shadow of title to such lands, and surrounding them by barbed wire fences, by which persons desiring to become settlers upon such lands were driven or frightened away, in some cases by threats or violence. The law was, however, never intended to operate upon persons who had taken possession un-

der a bona fide claim or color of title; nor was it intended that, in a proceeding to abate a fence erected in good faith, the legal validity of the defendant's title to the land should be put in issue. It is a sufficient defence to such a proceeding to show that the lands enclosed were not public lands of the United States, or that defendant had claim or color of title, made or acquired in good faith, or an asserted right thereto, by or under claim made in good faith, with a view to entry thereof at the proper land office under the general laws of the United States."

To the same effect is *Buxton v. Traver*, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, wherein the court said:

"A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase. If, within a specified time after the surveys, and the return of the township plat, the settler takes certain steps, that is, files a declaratory statement, such as is required when the surveys have preceded settlement, and performs certain other acts prescribed by law, he acquires for the first time a right of preemption to the land. . . . He has been permitted by the government to occupy a certain portion of the public lands, and therefore is not a trespasser, on his statement that when the property is open to sale, he intends to take the steps prescribed by law to purchase it; in which case he is to have preference over others in purchasing, that is, the right to preempt it. The United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject. They simply say to him, if you wish to settle upon a portion of the public lands, and purchase the title, you can occupy any unsurveyed lands which are vacant and have not been reserved from sale; and, when the public surveys are made and returned, the land not having been in the meantime withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them."

The second contention undoubtedly finds support in the comparatively recent case from this court of *Okanogan County v. Cheetham*, 37 Wash. 682, 80 Pac. 262, 70 L. R. A. 1027. In this case, while perhaps not strictly necessary to

a decision of the questions presented, it was said that the grant of the right of way made by this act was a grant *in praesenti*; and cases were cited which held, under grants containing similar expressions, that a present interest passed by such a grant, which took effect as of the date of the grant whenever the land granted was definitely located. But, on further consideration, we have reached the conclusion that this is not a correct construction of the act.

The case chiefly relied upon as supporting the doctrine · of a present grant was *Railroad Co. v. Baldwin*, 103 U. S. 426, 26 L. Ed. 578. But an examination of the grant construed in that case will show that it is not at all similar to the grant in the act now in question. In that case the grant was made to a grantee named in the act, and who was then capable of accepting the grant. The right of way granted was limited to a single line through specifically defined territory, and its acceptance by the grantee named exhausted the grant. It was a conveyance, pure and simple. Not so, with the act here in question. It has no limitation as to the territory in which it operates. No grantee is named in it, and any corporation, whether public or private, capable of establishing highways, has the right under it to construct a highway over any of the unreserved public lands. The act, in all of its essential features, is a law rather than a conveyance. It is a grant in the sense that the Oregon donation act, the preemption act, and the homestead act, are grants, and subject to the rules that govern such acts. That is to say, the grant in each of these several acts becomes complete upon a compliance with the terms of the act, and the grant dates, at the earliest, from the time the initiatory steps are taken which ripen into the completed title. As was said by the supreme court of the United States, when speaking of the Oregon donation act, in *Hall v. Russell*, 101 U. S. 503, 25 L. Ed. 829:

"The opening words of sect. 4 are 'that there shall be, and hereby is, granted.' This is appropriate language in which

to express a present grant, but as was well remarked by Mr.
Justice Field for the court in *Missouri, Kansas, and Texas*
*Railway Company v. Kansas Pacific Railway Company* (97
U. S. 491), 'It is always to be borne in mind, in construing
a congressional grant, that the act by which it is made is a
law as well as a conveyance, and that such effect must be
given to it as will carry out the intent of Congress.' There
cannot be a grant unless there is a grantee, and consequently
there cannot be a present grant unless there is a present
grantee. If, then, the law making the grant indicates a
future grantee and not a present one, the grant will take
effect in the future and not presently. In all the cases in
which we have given these words the effect of an immediate
and present transfer, it will be found that the law has desig-
nated a grantee qualified to take, according to the terms of
the law, and actually in existence at the time. Thus, in
*Rutherford v. Green's Heirs* (2 Wheat. 196), the grantee
was Major-General Greene; *Lessieur v. Price* (12 How. 59),
the State of Missouri; in *United States v. Arredondo* (6 Pet.
691), Arredondo & Son; in *Fremont v. United States* (17
How. 542), Alvarado; in *Schulenburg v. Harriman* (21
Wall. 44), the State of Wisconsin; in *Leavenworth, Law-*
*rence, and Galveston Railroad Company v. United States*
(92 U. S. 733), the State of Kansas; and, without particu-
larizing further, it may be said generally that in the swamp-
land cases and all the internal-improvement-grant cases,
where for the most part the question has arisen of late, if
a grant has been held to take effect presently, the State or
some corporation, having all the qualifications specified in
the act, has been designated as grantee. In other words,
when an immediate grant was intended, an immediate grantee,
having all the requisite qualifications, was named."

So the grant in question here remains in abeyance until a
highway is established under some public law authorizing its
establishment, and takes effect as a grant from that time.

Did the respondent have such a right in the lands of which
he had possession as to preclude the establishment of a high-
way through them without condemning his interests? We
think he did. As we have shown, he was not a trespasser on
the lands. On the contrary, he was there by the express per-

mission of the government. His interests were valuable and constituted property. And while the government of the United States might have made a valid grant of the lands to another without consulting him or acquiring his interests, it has not done so, and as against everybody but the government his interests are paramount. Whether the county can, under the act of 1903 above quoted, establish a highway across unsurveyed public land by marking the way on the ground and declaring the way marked a highway by resolution, we need not here inquire. We are clear that it cannot do so as against the interests of the respondent. As to him, a highway must be established after the manner prescribed in the act of 1895, and the acts amendatory thereof, or by user for such a period as will ripen into a prescriptive right.

The judgment is affirmed.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.

CROW and MOUNT, JJ., concur in the result.