[No. 10864.   Department Two.   November 1, 1913.]

LOUIS STOFFERAN *et al, Appellants*, v. OKANOGAN COUNTY
*et al., Respondents.*[1]

APPEAL—REVIEW—HARMLESS ERROR. Irregular additional findings are harmless, where the trial court did not see the witnesses, since, on trial *de novo* on the same record, the findings are accorded no weight in the supreme court.

APPEAL—REVIEW—HARMLESS ERROR. The admission of a letter from the register of a local land office, not an exemplified copy of its records under the terms of any statute is harmless error where the fact to which it was directed was established by other competent evidence.

PUBLIC LANDS—SETTLERS—HOMESTEAD — POSSESSION — EVIDENCE—ADMISSIBILITY. The right to possession of land by a claimant of an additional homestead may, as against mere trespassers, be shown by oral evidence of the date of the filing of the application and of a *bona fide* intent to take the land as an additional homestead.

SAME—GRANTS—RIGHTS OF WAY—HIGHWAYS—SETTLERS ON UNSURVEYED LAND—POSSESSORY RIGHTS. U. S. Rev. Stats., § 2477, granting rights of way over the unreserved public lands of the United States, and Rem. & Bal. Code, § 5607, authorizing boards of county commissioners to accept by resolution such Congressional grant, do not amount to a grant *in praesenti*, as to unsurveyed lands in the possession of a *bona fide* settler; but the grant is held in abeyance until a highway is established by law.

[1]Reported in 136 Pac. 484.

SAME—FEDERAL GRANT—ESTABLISHMENT OF HIGHWAY. The grant by U. S. Rev. Stats., § 2477, of a right of way for county roads over the unreserved public lands of the United States, takes effect when the highway has been established by prescription or used for the requisite period; and in such case it is not necessary that the road be first established by proceedings before the county commissioners upon petition.

SAME—FEDERAL GRANT—LANDS IN INDIAN RESERVATION—ADVERSE USE. Indians being wards of the government, lands in an Indian reservation are reserved for public use until the reservation is thrown open to settlement, and do not come within the provision of U. S. Rev. Stats., § 2477, granting rights of way for highways over public lands "not reserved for public use," especially in view of the act of March 3, 1901, providing for roads in Indian reservations; hence user by the public of a highway in a reservation, prior to the opening of the same for settlement, does not inure to the benefit of the county so as to establish a highway by prescription.

SAME—FEDERAL GRANT—ACCEPTANCE — ESTABLISHMENT     Under Rem. & Bal. Code, §§ 5607, 5608, authorizing county commissioners to accept grants of rights of way for highways over public lands, the county commissioners cannot, by a general resolution, accept the grant of rights of way for highways over the public lands by U. S. Rev. Stats., § 2477, so as to acquire any title to a particular road, until the road has been established in some manner recognized by law.

Appeal from a judgment of the superior court for Okanogan county, Steiner, J., entered March 28, 1912, upon findings in favor of the defendants, in an action to restrain a trespass. Reversed.

*P. D. Smith*, for appellants.

*J. W. Faulkner* and *Neal & Neal*, for respondents.

ELLIS, J.—The plaintiffs brought this action to restrain the defendants from cutting their fences or interfering with their property rights in the southeast quarter of the southeast quarter of section 22, township 36, north, range 28 E., W. M. It is admitted, that until October 10, 1900, this land was a part of the Colville Indian reservation, at which time the reservation was thrown open to settlement. Prior to that time, since 1896, it had been open to mineral location, and

there were a good many people in that locality even then, though few actual settlers until 1900. There appears to have been some sort of a road across this land long prior to any occupancy thereof by the plaintiffs. Prior to the government survey, the defendant Lanoue occupied this forty acres, and it is admitted that he fenced it, maintaining gates or bars across the road. As to whether or not these gates were always open to the public, there was a direct conflict in the evidence. Lanoue and other witnesses testified that they were; the plaintiff and one other witness, that they were often locked. The plaintiffs claim that, on September 22, 1909, the plaintiff husband filed an application in the United States land office, at Waterville, for the location of scrip for soldier's additional homestead on this forty acres. In July, 1910, he built a fence across the road in controversy, prohibiting travel thereon. Shortly afterward, Lanoue, under direction of the county commissioners, cut the wires of this fence, claiming the road as a public highway, and plaintiffs brought this action.

The complaint alleged, in substance, that the plaintiffs were the owners, subject to the paramount title of the United States, of the land in question; that the defendants unlawfully entered upon the land and destroyed the plaintiffs' fences; that no public highway has ever been established over this route; and prayed for an injunction perpetually restraining the defendants from interfering with the fences, or trespassing on the land, and for damages in the sum of $100 and costs.

The answer alleged that the road in question has been, for over eleven years last past, a public highway and county road; that the plaintiffs wrongfully erected the fences; that the defendants did no injury to the fences except to cut them where necessary; that this road has been used as a public highway since 1895; that, by virtue of § 2477, Revised Statutes of the United States, the public has a vested right to the road; that no part of the land in question has been reserved for public uses or purposes; that the county commis-

sioners, by resolution, accepted the grant of roads over the public domain granted by the above mentioned statute; and that, for more than eleven years last past, the public has been "in open, notorious, peaceable, exclusive, uninterrupted and adverse possession and use of said public highway under a *bona fide* claim of right thereto;" and prayed for the recognition of a right of way sixty feet wide as a public highway, and that the plaintiffs be restrained from interfering therewith, and for costs. The reply put in issue these affirmative matters.

The cause was tried before Honorable Ernest Peck, late judge of the superior court of Okanogan county, who died before rendering a decision. His successor being disqualified, the record of the trial was, on stipulation of the parties, submitted to the Honorable R. S. Steiner, another superior judge, for decision. Judge Steiner made findings to the effect that the road in question had been continuously traveled as a public road and highway, at all times since the year 1895, until closed by the plaintiffs; that it was plainly marked upon the ground, and in a good state of repair; that no part of the land claimed by the plaintiffs had been reserved by the United States for any public use; that on August 11, 1903, the county commissioners of Okanogan county passed the following resolution:

"On motion of Commissioner Rosenfelt, seconded by Commissioner Wehe, the following order is unanimously adopted: Be it remembered, That on the 11th day of August, A. D. 1903, at a regular meeting of the board of county commissioners in and for Okanogan county, state of Washington, said meeting being duly held and all members of said board being present, on motion it was ordered and resolved, that the right-of-way for the construction of highways over public lands as granted by act of Congress (Sec. 2477, Revised Statutes of the United States) be, and the same is hereby accepted, as far as said grant relates to said Okanogan county, state of Washington, that is to say, to the extent of thirty feet on each side of the center line of all wagon roads which now exist or which have heretofore existed upon or

across or over lands that are now public lands of the United
States, not reserved for public uses in said Okanogan county,
Washington;"

that, during all times since 1895, except for about four days
when interrupted by the action of the plaintiffs, the general
public has been in "open, notorious, peaceable, exclusive, un-
interrupted and absolute use and possession of said road and
highway, at all times claiming a legal right thereto as and
for a public highway;" that the plaintiffs claim some right to
the land over which the road passes, but the evidence does
not establish any vested right in the plaintiffs to such land.
On appropriate conclusions, the court entered a decree that
the plaintiffs take nothing by this action, and that the de-
fendant, Okanogan county, recover from the plaintiffs its
costs; that the road in question is now, and has been, at all
times since 1895, a public road and highway of the defendant
county; that the plaintiffs have no right, title or interest in
the roadway extending across the land in question, as the
same existed and was used at the time of the commencement
of this action, and that the title to the roadway as a public
highway be quieted in the defendant county; and enjoined
the plaintiffs from obstructing or interfering with it to the
extent of thirty feet on each side of the center line thereof.
From the decree, the plaintiffs prosecute this appeal.

After the signing of the decree, the court, at the instance
of the appellants, made certain other findings, which the re-
spondents move to strike. Since this is a trial *de novo,* in
which we are passing upon the same record upon which the
lower court based his decree, and since the lower court himself
did not hear the evidence, his findings are not entitled to the
same weight which would be accorded findings made by a
judge who heard the evidence. Under such circumstances,
these additional findings, though irregularly entered, cannot
be prejudicial. The motion is denied.

I. On the merits, the respondents contend that the decree
should be affirmed, because the plaintiffs showed no title to

the land over which the road passed. The evidence of title and right to possession introduced by the plaintiffs, was, in substance, as follows: The plaintiff husband testified that he bought and applied certain soldier's additional homestead scrip by filing upon this land; that, pursuant to his filing, he received from the United States land office, at Waterville, notices to be posted, and posted one upon the land and published one in the Riverside Argus, received the affidavit of publication, and forwarded it to the United States land office at Waterville, all of which was done under printed and written instructions from the land office. He further testified that, at that time, he went into possession and fenced the land. The plaintiffs, over objection that it was not the best evidence, introduced a letter to their attorney from the register of the United States land office at Waterville, which read as follows:

Department of the Interior,
United States Land Office.
Waterville, Wash.
September 12, 1910.

Mr. P. D. Smith,
Conconully, Wash.
Sir:—

Louis Stofferan filed a Soldier's Additional Homestead Application, 06864, on September 22, 1909, for the Lot 6, SE¼ SE¼ Sec. 22, T. 36 N., R. 28 E. W. M. and the same was transmitted to the General Land Office at Washington D. C. from which nothing further has been heard in this office. This application segregates the land from further filing.

I hereby certify that the above is a true and literal exemplification of the records in the above case.

W. F. Haynes,
Register.

It will be noted that this letter purports to be a certificate or exemplification of the record of the plaintiff's filing in the local land office, and it is authenticated only by what purports ·to be the signature of the officer by whom it is signed. Assuming, without deciding, that it is not an exemplified copy within the terms of the Federal statute or of any statute of this state, its admission would not change the result. Its

admission could not be prejudicial, since the oral testimony was sufficient to establish the rightfulness of the appellants' entry and possession of the land, subject to the paramount rights of the United States, as against all persons showing no better right. It established a *bona fide* intention to take the land as an additional homestead which was sufficient to sustain the right of possession as against mere trespassers. Without regard to this certificate, we think the parol testimony of Stofferan himself was competent and sufficient to show the origin, inception and rightfulness of his possession. It has been held that the actual date of the filing of such an application by the assignee of soldier's additional homestead scrip may be proved by parol, even to contradict an indorsement upon the papers themselves in the land office, in order to show rightful possession as against a trespass committed prior to the filing date shown upon such papers. *Hastay v. Bonness,* 84 Minn. 120, 86 N. W. 896. It was not incumbent upon the appellants to prove complete title. A right of possession only was requisite.

"While the plaintiff did not acquire full title to the land through her application, yet, if the same was valid and authorized by law, it entitled her to an inchoate interest therein, with a right of possession as against trespassers." *Hastay v. Bonness,* 84 Minn. 120, 86 N. W. 896.

"It is claimed, however, that an entry under the homestead law gives the settler no vested rights in the land until the issue of the patent. To this we cannot assent. We are aware that it has been authoritatively decided in *Frisbee v. Whitney,* 9 Wall. 187, and the *Yosemite Valley Case,* 15 Wall. 77, that occupation and improvement on public lands with a view of pre-emption do not confer any vested right in the land as against the United States; that this is only obtained when the purchase-money has been paid and the receipt of the land-office given to the purchaser. This is put upon the ground that until such time the proposed pre-emptor has merely a right to be preferred in the purchase over others, provided a sale is made by the United States. But a homesteader, after entry, occupies an entirely different position. He has in fact purchased. His entry which is made by mak-

ing and filing an affidavit and paying the sum required by law, is a contract of purchase, which gives him an inchoate title to the land, which is *property*. This is a substantial and vested right which can only be defeated by his failure to perform the conditions annexed." *Red River & Lake of the Woods R. Co. v. Sture*, 32 Minn. 95, 20 N. W. 229, 230.

See, also, *Enoch v. Spokane Falls & N. R. Co.*, 6 Wash. 393, 33 Pac. 966.

The appellants' proof of interest was sufficient to put the respondents to proof of a better title in the county if it had one.

II.   The county's title to the right of way, if it has any, must be traced to the grant from the general government found in § 2477 of the Revised Statutes of the United States, which reads as follows: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." This court first held that grant to be a grant *in praesenti* immediately effective upon user by the public without the necessity of formal action on the part of the state. *Okanogan County v. Cheetham*, 37 Wash. 682, 80 Pac. 262, 70 L. R. A. 1027. In the more recent case of *McAllister v. Okanogan County*, 51 Wash. 647, 100 Pac. 146, 24 L. R. A. (N. S.) 764, this court reconsidered the character of the grant, and overruled the *Cheetham* case in so far as it held the grant to be one *in praesenti*. In the *McAllister* case, it is said:

"The second contention [that the grant is one *in praesenti*] undoubtedly finds support in the comparatively recent case from this court of *Okanogan County v. Cheetham*, 37 Wash. 682, 80 Pac. 262, 70 L. R. A. 1027. In this case, while perhaps not strictly necessary to a decision of the questions presented, it was said that the grant of the right of way made by this act was a grant *in praesenti*; and cases were cited which held, under grants containing similar expressions, that a present interest passed by such grant, which took effect as of the date of the grant whenever the land granted was definitely located. But, on further consideration, we have reached the conclusion that this is not a correct con-

struction of the act . . . The act, in all of its essential
features, is a law rather than a conveyance. It is a grant in
the sense that the Oregon donation act, the preemption act,
and the homestead act, are grants, and subject to the rules
that govern such acts. That is to say, the grant in each
of these several acts becomes complete upon a compliance
with the terms of the act, and the grant dates, at the earliest,
from the time the initiatory steps are taken which ripen into
the completed title . . . So the grant in question here
remains in abeyance until a highway is established under
some public law authorizing its establishment, and takes ef-
fect as a grant from that time."

The respondent earnestly urges that we now overrule the
*McAllister* decision and return to our holding in the *Cheet-
ham* case, but a thorough reconsideration of the question
convinces us that the *McAllister* case is correct, both upon
reason and authority.

The appellant contends that, since the act of Congress re-
ferred to is not a grant *in praesenti,* it can only be available
by the establishment of the road by the county commissioners
upon application by petition of at least ten householders of
the county residing in the vicinity of the proposed road, as
provided in Rem. & Bal. Code, §§ 5623, 5624 *et seq.;* citing
in support of that view, *Tucson Consol. Copper Co. v. Reese,*
12 Ariz. 226, 100 Pac. 777; but, in that case it was held
that, under the laws of Arizona, no road could be established
except under a statute similar to that contained in the sec-
tions of our statute above cited. In this state, however, we
have repeatedly held that roads may be established by pre-
scription by the use by the public for a period of not less than
seven years, where the same have been worked and kept up at
the expense of the public, as provided in Rem. & Bal. Code,
§ 5657 (P. C. 441 § 91); or, where not so kept up at the
public expense, simply by continued use by the public for a
period co-extensive with the period of limitation for quieting
title to land, which is, in this state, ten years. *Seattle v.
Smithers,* 37 Wash. 119, 79 Pac. 615; *Okanogan County v.*

*Cheetham, supra; State v. Horlacher,* 16 Wash. 325, 47 Pac. 748; *Smith v. Mitchell,* 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858. It will be noted that the *Cheetham* case is not overruled by the *McAllister* case in this respect, as is shown by the following language from the latter case:

"Whether the county can, under the act of 1903 above quoted, establish a highway across unsurveyed public land by marking the way on the ground and declaring the way marked a highway by resolution, we need not here inquire. We are clear that it cannot do so as against the interests of the respondent. As to him, a highway must be established after the manner prescribed in the act of 1895, and the acts amendatory thereof, or by user for such a period as will ripen into a prescriptive right."

It is plain that, under the authority of the foregoing decisions, a public highway in this state may be just as effectually established by prescription as by order of the county commissioners on petition.

In *Smith v. Mitchell, supra,* this court held that, under U. S. Rev. Stats, § 2477, above quoted, the establishment of highways over public lands may be made in any of the ways recognized by the law of the state in which such lands are located, and that in this state such highways may be established by prescription, dedication, or user as well as by proceedings under the state statute by petition. The net result of our decisions, therefore, is that the United States statute takes effect as a grant only when the *res* comes into being, that is, when the road has been established on petition as prescribed by our statute, or by use for the period required for prescription prior to the attaching of any adverse rights upon the public lands over which it passes.

The evidence in this case wholly fails to show that the road here in question was ever established by proceedings pursuant to petition under the statute. It also fails to show that any work has ever been done upon this road by the county, or at the expense of the county. In fact, there is no serious claim that this road could be maintained as a public road under the

seven-year statute. Rem. & Bal. Code, § 5657 (P. C. 441 § 91). It is plain, therefore, that the county has shown no title or right to this road unless it be by reason of continuous use for a period co-extensive with the period of limitation for quieting title, that is to say, for ten years. It is clearly established, and the fact is not mooted, that the land here in question was a part of the Indian reservation, which was not thrown open for settlement until October 10, 1900. Prior to that time, it was reserved for the use of the Indians. The Indians are wards of the government, and the reservation of public lands for their use would seem clearly to be a reservation for public use, so that, until the reservation was thrown open for settlement, the land here in question did not come within the purview of the grant contained in § 2477 of the Revised Statutes of the United States. This view is further borne out by the fact that, prior to March 3, 1901, Congress had provided no method for the construction of public highways on Indian reservations. Section 4 of the act of that date provides:

"That the secretary of the interior is hereby authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper state or local authorities for the opening and establishment of public highways, in accordance with the laws of the state or territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indians under any laws or treaties but which have not been conveyed to the allottees with full power of alienation." 31 Stats. at Large, p. 1084, ch. 832.

This section would have been useless if § 2477, which was passed in 1866, applied to Indian reservations. Section 2339 of the Revised Statutes of the United States gives the right to appropriate waters and rights of way for irrigation, mining, and manufacturing purposes across the public lands, but we have held that no such right can be acquired in lands included within an Indian reservation prior to its being thrown open for public settlement. *Avery v. Johnson*, 59 Wash.

332, 109 Pac. 1028. It would seem plain that, by parity of reason, no use by the public, however long continued, of the right of way here in question prior to the opening of the reservation for settlement on October 10, 1900, could inure to the benefit of the county under § 2477 of the Revised Statutes. Assuming that the evidence fully established an open, notorious, and adverse use of this land by the public at all times since the opening of the reservation to settlement, until the appellants made their filing and went into possession of the forty acres here in question, and even until they built their fence across the road, in July, 1910, the period is still some months short of the prescriptive period fixed by analogy to the ten-year statute of limitations. Since the grant contained in § 2477 is not a grant *in praesenti* it could only attach upon the acquiring of title by the complete lapse of the period of prescription subsequent to the opening of the reservation for settlement and prior to the attachment of any adverse rights.

The respondent, however, contends that under the act of 1903, Rem. & Bal. Code, §§ 5607, 5608 (P. C. 441 §§ 161, 163), the general resolution of the board of county commissioners of Okanogan county entered on August 11, 1903, was such an acceptance of the grant as gave the county complete title from that date. Under our holding in *McAllister v. Okanogan County*, this position is untenable. The right could only attach as a vested interest in the county upon the establishment of the road in some manner recognized by the laws of this state. The act of 1903 was merely intended as an authorization to the boards of county commissioners of the various counties of this state to avail themselves of the grant by the establishment of roads across public lands of the United States not reserved for public use.

We are constrained to hold that there was sufficient evidence in this case to establish a right to possession in the appellants prior to any vested right in the respondent county,

and that the respondent has shown no right to the road in question as a public highway.

The judgment is reversed, and the case is remanded with directions that the injunction issue as prayed for.

CROW, C. J., MORRIS, MAIN, and FULLERTON, JJ., concur.