## No. 8681.

### KORF, ET AL. v. ITTEN.

1. HIGHWAYS—*Establishment—Burden of Proof.* One claiming as a public highway lands in private possession by one claiming title, has the burden of proving the lawful establishment of the highway.

2. *Abandonment—Burden of Proof.* One asserting abandonment of a highway, the establishment of which is admitted or proved, has the burden of showing such abandonment.

3. PUBLIC LANDS—*Homestead—Right of Entryman.* Rev. Stat. sec. 5834 authorizes the County Commissioners to declare any section or township line in the public domain a public highway. Sec. 2477 of the Revised Statutes of the United States (U. S. Comp. St. 1916, sec. 4919) grants a right of way for the construction of highways over any public land not reserved for public use. One who enters land under the homestead act acquires an inchoate title which has the effect to except such lands from the provisions of the statutes. A highway is not to be established under the statutes cited over land so claimed.

4. ABANDONMENT OF HOMESTEAD—*Effect.* The declarations of a highway by the Board of County Commissioners over public lands claimed as a homestead, is without effect, though the entry was subsequently abandoned. The rights of the public in the supposed highway are tested by the conditions existing at the time of the attempted establishment.

5. *Rights and Remedies of Landowner.* A landowner in possession is not under duty to bring a direct action to vacate a defective proceeding to establish a road over his lands. He may rely upon his possession until his right is assailed.

6. APPEAL AND ERROR—*Wrong Reason for Right Judgment.* Where
   the court below reached a correct conclusion the judgment will
   not be reversed, though based on erroneous reasoning.
7. *Findings on Conflicting Evidence,* will not be disturbed.
8. HIGHWAYS—*By Prescription.* Action to enjoin a road overseer
   from opening an alleged public highway. Evidence held insuf-
   ficient to establish a highway by prescription.

*Error to Yuma District Court, Hon. H. P. Burke, Judge.*

Messrs. McCONLEY & McCONLEY, for plaintiffs in error.

Mr. J. A. FOWLER, for defendant in error.

Mr. Justice Hill delivered the opinion of the court.

THE main purpose of this action was to enjoin the de-
fendant in error, a road overseer of Yuma County, from
tearing down a portion of certain fences belonging to the
plaintiffs in error, for the purpose of opening certain al-
leged public highways, a portion of which, if opened, will
be upon twenty quarter sections of land, admitted to be
owned by the plaintiffs in error, unless title to the por-
tion in controversy had become vested in the county for
road purposes. The court found that the lands in dispute
were public highways and gave judgment accordingly.

The lands in question being under fence, with the plain-
tiffs in possession claiming title thereto, the burden of
proof was upon the defendant to show the existence of
the highway, which was put in issue. When this is estab-
lished, the burden (which was made an issue) is upon the
landowner to show that the highways had been abandoned.
*Dingwall v. Weld County,* 19 Colo. 415, 36 Pac. 148.

The defendant claims First, that these roads were es-
tablished by the board of county commissioners of Weld
County in 1886, when these lands were a part of that
county, and that in case its proceedings are insufficient to
sustain this contention, that all parties have acquiesced
therein for about twenty-six years, and that after this long
period the plaintiffs should be estopped from claiming
otherwise; also that these facts are sufficient to establish
highways by prescription. To sustain the first claim, he

relied upon the record of the board of county commissioners of Weld County. It discloses that upon October the 12th, 1886, a petition was presented to it, signed by about forty alleged landowners. This petition prays, that a county road or roads be laid out as follows: "Commencing at S. W. corner of Township, I N. R. 48 W., on the base line and on each section line east through ranges 48 and 47 west and to turn north to Township 5 N. R. 48 and 47 W. Also to commence at the same point and on each section line North on R. Line between 48 and 49 W. to Township 5 N. R. 48 W. and run east through ranges 48 and 47 W. Said roads to run on said section and range lines or as near as practicable. * * * Said road to be not less than sixty (60) feet in width;" that upon October 23rd, following the filing of this petition, a purported order of the board signed by its chairman was entered thereon as follows:

"Presented to the Board of County Commissioners Oct. 23rd, 1886, when the following action was taken and entered of record, to-wit: It appearing to the Board that the right of way is all granted for said roads except through unpatented Government land which is taken in accordance with Sec. 2477 of the revised statute of the U. S., and the Board believing that public good requires said road, on motion it was ordered that the prayer of the petitioners be granted and the roads herein described be and are hereby declared public highways. The Clerk is directed to record the petition, plat the roads, and notify the road overseer of the proper district to open said roads to travel at once;" that the petition and order endorsed thereon were duly filed and recorded in the office of the Clerk and Recorder in Weld County, on November 3rd, 1886; that on said 23rd day of October, 1886, a similar order or copy of this order was, by the clerk, entered in the records of said Board of County Commissioners.

It will be observed that the road or roads prayed for in this petition include all section lines in eight townships, a distance of about six hundred and forty-eight miles. The

petition discloses that practically all the petitioners who signed it as purported freeholders, reside in one township, and that no ten of them lived within two miles of any portion of the section lines covered by the alleged roads surrounding the greater portion of the lands in controversy, for which reason it is claimed the record shows affirmatively that the board was without jurisdiction to act as it did, hence its efforts were void. It is also claimed that no survey was made, no viewers appointed, no notices posted, and no compensation given, for which reasons no road was established. These contentions may be eliminated by calling attention to the fact that the petition was not presented for action under the provisions of the statute which counsel refers to, but to the contrary, was an effort under general section 5850, Revised Statutes, 1908, which authorizes the establishment of a road where all of the right of way is given, in which case the appointment of appraisers, the posting of notices, etc., is not required. As to government land, this record discloses that the board's action was attempted by authority of the latter portion of section 5834, Revised Statutes, 1908, which is to the effect that the commissioners may, at any regular meeting, by an order of the board, declare any section or township line on the public domain a public highway, and that on and after the date of such order (which shall be attested by the clerk under the seal of the county and recorded in the office of the recorder of deeds), the road so laid out shall be a public highway. This procedure as to government land not filed upon is authorized by section 2477, Revised Statutes of the United States. In such circumstances, it is unnecessary to determine whether this petition sought to establish many roads, as claimed, instead of one, or whether the petitioners resided within two miles of those in controversy, if each section line is to be considered as a separate road for the purposes of compliance with the statutes.

The plaintiffs in error own about twenty quarter sections of land through which these roads are alleged to exist. Nine

of these quarters had homestead or preemption filings upon them when, on October 23, 1886, the Weld County board made its order declaring a part thereof as public highways by virtue of it being public land. Thereafter, eight of these filings were relinquished, which lands were entered by others, several years after the board's order calling for this road. These last entries ultimately ripened into title. Patent was issued for one quarter upon the original filing, which was in existence when the board made its order declaring a public highway thereon. None of the original entrymen signed the petition for the roads. For these reasons, it is urged that the board's order declaring these section lines public highways, did not affect the lands upon which filings were in existence where the petition had not been signed by these entrymen, regardless of the fact that eight of these entries were thereafter relinquished to the government and subsequently filed on by others who procured title. The question for determination concerning these eight quarters is, were they at the time of the board's order a part of the public domain within the meaning of Section 2477, Revised Statutes of the United States. It reads: "The right of way for the construction of highways over public lands not reserved for public uses is hereby granted." Section 5834 of our Revised Statutes, 1908, provides that the board of county commissioners may, at any regular meeting, etc., declare any section or township line on the public domain a public highway.

In *Stofferan v. Okanogan County*, 76 Wash. 265, 136 Pac. 484, it was held that Section 2477, Revised Statutes of the United States did not operate as a grant *in praesenti* that the grant thereunder did not take effect until the highway was established, under some public law. In holding that a homestead entryman's right was superior to that of the county for road purposes attempted to be established subsequent to the entry but prior to the patent, the court said:

"But a homesteader, after entry, occupies an entirely different position. He has in fact purchased. His entry, which is made by making and filing an affidavit and paying

the sum required by law, is a contract of purchase which gives him an inchoate title to the land, which is property. This is a substantial and vested right which can only be defeated by his failure to perform the conditions annexed."

By analogy, this phase of this question has been determined by this court in *D. & R. G. R. R. Co. v. Wilson,* 28 Colo. 6, 62 Pac. 843, in which it was held that the act of Congress of March 3, 1875 was not in the nature of an absolute grant *in praesenti,* but was an offer to all railroad companies to have a right of way over the public lands of the United States, that is that they might accept it if they wished. This act granting a right of way to railroads is quite similar to the one concerning public highways. In holding that it did not give to the railroads a right of way over lands held by a preemptor, not located prior to his preemption filing, the court said:

"It necessarily follows from this ruling that under this act a right of way is not in the nature of a grant *in praesenti.* Indeed, it was expressly decided that a settler, who had only an inchoate right, in actual occupancy (as plaintiff here unquestionably was) must be compensated if the line of road is built across his claim. The supreme courts of several of the states have come to the same conclusion."

In *Yakima County v. Tullar,* 3 Wash. T. 398, 17 Pac. 885, in passing upon a quite similar question, the court said:

"The right of way over 'public lands' that is granted to the public for roads, etc., doubtless contemplates strictly public lands, such as are open to entry and settlement, and not those in which the rights of the public have passed, and which have become subject to some individual right of settler, or the like, as in this case. Under the laws of the United States, appellee was in possession, and such possession was good as against the world so long as he complied with the laws. From all that appears, he had possession in this way, and to say that valuable features of the land as springs, and the land itself, can thus be taken without compensation to the honest settler, for the use of the public,

is to say a self-evident wrong.  *  *  *  The public have chosen to exercise their right of locating this road. They have the benefit. Let them pay the damage."

The same reasoning in these cases leads to the conclusion that the act of Congress under consideration did not make of these section lines public highways. . The act does not refer to section or township lines, but to the right of way for the construction of highways over public lands not reserved for public uses. It was a privilege which might be exercised or not. This fact was recognized by our legislature in the adoption of section 5834, *supra*, giving to the boards of county commissioners the right to declare section and township lines on the public domain, public highways, but until they did so, no highways existed, and when they attempt to do so their rights must be tested by conditions existing at that time, which, according to the decisions quoted from, is subject to the rights of the entryman.

The fact that these entries were thereafter relinquished, did not change this condition so as to make these lands public highways at the time of relinquishments. By an act of Congress of July 2, 1864, The Northern Pacific Railroad Company was granted every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of its railroad lines through certain territory, as it may adopt, etc., free from preemption or other claim at the time the line of said road is definitely fixed and a plat thereof filed, etc. In *Bardon v. Northern Pacific Railroad Co.*, 145 U. S. 535, 36 L. Ed. 806, 12 Sup. Ct. 856, the court held that lands, upon which filings were in existence at the time of the passing of this act, were segregated from the public lands and did not, by the cancellation of the preemption right before the location of the grant, pass to the company, but remained a part of the public domain. In commenting at page 538, the court said:

"The grant is of alternate sections of public land, and by public land, as it has been long settled, is meant such lands as is open to sale or other disposition under general laws.

All land, to which any claims or rights of others have attached, do not fall within the designation of public land."

Per the reasoning in this case, it follows that for the purposes of the establishment of this road, these quarters were not at that time a part of the public domain; such being the case, no road was àt that time established over them. The fact that they thereafter became a part of the public domain, according to the holding in the case last cited, did not change the result. The right acquired by virtue of the petition and order of the board must be tested by conditions as they existed when such action was taken, for these reasons we are of opinion that the county did not acquire the right of way for a road over any of the lands in controversy upon which valid filings were in existence, when the board attempted to act, without the signature of the entrymen to the petition.

It is admitted that the entry in existence on one of these quarters in 1886 ripened into title. The only claim to a road on it, which counsel do not make clear, is by prescription or acquiescence of the owner in the regularity of the proceedings, with a claim left the owner for damages, if any, for the right of way. They also claim that under no circumstances is he entitled to injunctive relief. We cannot agree with any of these contentions. Eliminating the question of prescription, which will be considered later, the statute prescribed the methods whereby highways can be established. If, in this respect, former efforts have not accomplished what was desired, those interested have the right to again institute proceedings in the method provided by law, but until this is done, they are not possessed with power to compel the owner to recognize the county's right to possession. When in possession the owner is not obliged to bring a direct action to set aside such proceedings, but may wait until his right to possession is attacked, before raising the question of validity, otherwise than to remain in possession under claim of title. *White et al. v. Town of Arvada,* 60 Colo. 343, 153 Pac. 696; *Munson v. Marks,* 52 Colo. 553, 124 Pac. 187.

The record discloses, that at the time and after the entry of this order of the board of county commissioners practically all the lands in controversy, including all others in that vicinity, were unfenced and the greater portion unoccupied; that people traveled over them in all directions following section lines where it suited their convenience and otherwise at their pleasure. There is nothing to show that there was any attempt of the county or any road overseer to, at that time, open any roads or do work upon them or otherwise. The record further discloses that this condition thus remained for about fourteen years; that thereafter the lands in controversy were enclosed by fences by the plaintiffs in error; that at most all of the section lines gates were put in for the convenience of the owners and who, with the public (which in that vicinity was not very large), was allowed to use them as a mode of ingress and egress through and over these lands. It is admitted that for many years plaintiffs paid taxes on the strips of land in controversy as a part of each entire quarter and that all of these last conditions continued for a period of about twelve years and up to the time that the road overseer made the threats to tear down the fences and open up the alleged roads, which brought about this litigation. Other testimony in support of the claim for public highways is that these section lines showed evidence of having been traveled, although some of them with but slight traces, while others would be traveled more if the fences were not there, and that at one time upon one of the section lines involved, that the road overseer in one of these fields or pastures, devoted one day's time with three men working thereon, in order to make it more fit for travel. The rule is, that if the judgment of the trial court can be sustained for any reason, it should be, although the one on which it is based is erroneous. We are not convinced that the judgment was upon the theory that roads had been established over the lands in controversy by acquiescence or prescription, if so, we think the testimony insufficient to support it. While the record does not state, we are of opinion that the judgment was upon the theory that the pro-

ceedings before the Board of County Commissioners were sufficient to establish the roads, which we conclude is not tenable in so far as nine quarters of this land is concerned. Per former rulings of this court, the evidence is entirely insufficient to sustain the claim of a road by prescription. *Lieber v. The People*, 33 Colo. 493, 81 Pac. 270; *Starr v. The People, etc.*, 17 Colo. 458, 30 Pac. 64.

It was stipulated that the testimony should only apply to that portion of the alleged highways affecting the alleged rights of the plaintiffs. The trial court held that roads had been established. We affirm this ruling as to any of these lands in controversy, which were not filed upon when the board declared these section lines public highways. The burden was upon the plaintiffs to show that they had been abandoned; the judgment necessarily includes the holding that they had not; the testimony is conflicting concerning it, but does disclose that the remaining strips in controversy had been used for road purposes, for which reasons we are not at liberty to reverse the ruling in this respect.

The judgment will be reversed and the cause remanded for further proceedings, as the parties may be advised, not inconsistent with the views herein expressed.

*Reversed.*

Decision *en banc.*