Richard N. LEE and Marsha A. Lee,
Defendants–Appellants,

v.

Charles MASNER, Clotene Masner, Stan
Park, Jaylene Park, Joe Zanin, and Ju-
dith Zanin, Intervenors–Appellees.

No. 99CA2146.

Colorado Court of Appeals,
Div. V.

Dec. 20, 2001.

Rehearing Denied March 14, 2002.

Preeo Silverman Green & Egle, P.C., El-
don E. Silverman, Denver, CO, for Defen-
dants–Appellants.

Wilderson, O'Hayre & Dawson P.C., Rufus
O. Wilderson, Gunnison, CO, for Interve-
nors–Appellees.

Opinion by Judge NIETO.

In this dispute concerning access to a road,
defendants, Richard N. Lee and Marsha A.
Lee, appeal a judgment, entered after a trial
to the court, in favor of intervenors, Charles
Masner, Clotene Masner, Stan Park, Jaylene
Park, Joe Zanin, and Judith Zanin (collec-
tively Masners). The trial court found that a
road crossing the Lees' property was a public
road. We affirm.

The action was commenced by Rudolph
and Mary Volk. While the case was pending,
they sold their ranch to the Masners, who

intervened in the case. The Volks are not parties to this appeal.

The Lees own a ranch adjacent to and south of the Masners' ranch. The Masners' predecessors in title, the Volks, had accessed their property for decades by passing through a gate on the Lee ranch and traveling across a road on the Lee ranch. In 1997, the Lees refused access to hunters who had been authorized by the Volks to come onto the Volks' ranch.

The Volks then filed this action. After the Masners intervened in the case, they filed a third-party complaint asserting that the access road was a public highway, that they had an implied easement by necessity, and that they had an easement by prescription. The Masners prevailed on the public road claim, but the trial court did not rule on the other claims.

The trial court found that the road in question was a public road pursuant to "R.S. 2477," a federal statute that has since been repealed. That federal statute provided that "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (1866)(formerly codified at 43 U.S.C. § 932)(repealed by 43 U.S.C. § 1769). The repealing act specifically provided that it would not have the effect of terminating any right-of-way previously permitted.

■ The supreme court has held that R.S. 2477 was an express dedication of roads over public land where the roads were established by public use. The use necessary to establish the road can be very limited, and "if the use be by only one, still it suffices." *Leach v. Manhart*, 102 Colo. 129, 133, 77 P.2d 652, 653 (1938). However, the road must be established before the government land is withdrawn from the public domain. *Korf v. Itten*, 64 Colo. 3, 169 P. 148 (1917).

■ Therefore, the critical issue here is the date the Lees' property was removed from the public domain and appropriated to a private use.

The following facts concerning Lees' property were undisputed. John Bear, who obtained the original patent on the land by homesteading it, first entered the land in 1911 or 1912 and continuously lived on it until the patent issued in 1932. The road was established by Bear in 1919, and it was used by the public thereafter. Bear did not apply for homestead rights until he signed the Homestead Entry form on September 26, 1924. The form was certified in the United States Land Office on November 23, 1926.

By applying the doctrine of relation back, the trial court found that the property was removed from the public domain when the homesteader's Homestead Entry form was certified in the Land Office in 1926, a date after the road was established. Therefore, the trial court concluded that, because the road was used by the public before 1926, it was a public road pursuant to R.S. 2477.

## I.

The Lees contend that the trial court erred in applying the doctrine of relation back. They argue that under the doctrine title relates back to the time the homesteader first took possession of the land. We disagree.

Colorado has long recognized the relation back doctrine in the context of rights in land acquired through federal homestead law. In a case involving rights in land during the time between a homestead entry and issuance of a patent, the supreme court said: "It is settled law that one who has obtained a patent for land entered by him has a title which relates back to his entry...." *Scott v. Buchanan*, 64 Colo. 571, 573, 174 P. 1123, 1124 (1918).

A division of this court has explained the relation back doctrine in the context of a patentee's rights in land:

> Moreover, one who has obtained a patent for land has a title which relates back to the first qualifying act which definitively located the boundaries of the claimed land so as to legitimately bar others from entry. Hence, a patent, when issued, relates back to the date of the inception of the rights of the patentee in the land.

*Board of County Commissioners v. Ritchey*, 888 P.2d 298, 301 (Colo.App.1994) (citations omitted). The division held that, although

the railroad did not obtain the patent from the federal government until 1896, the property was removed from the public domain before 1887 when the railroad filed a map locating the property, an act sufficient to identify the property for purposes of the federal law granting the property to the railroad.

The term "entry," as used in the context of acquisition of rights in land under federal homestead law, means: "An entry under the United States land laws for the purpose of acquiring title to a portion of public domain under the homestead laws, consisting of an affidavit of the claimant's right to enter, a formal application for the land, and payment of the money required." *Black's Law Dictionary* 627 (4th ed.1957).

In 1866, the Supreme Court used the term "entry" in a manner consistent with this definition: "The children ... [were] allowed to enter the lands in controversy. The proper certificate of this donation entry, as it is called, was transmitted, as is usual in land entries, to the General Land Office at Washington...." *Witherspoon v. Duncan*, 71 U.S. (4 Wall.) 210, 210, 18 L.Ed. 339, 342 (1866). The Court went on to hold:

> In no just sense can lands be said to be public lands after they have been entered at the land office and a certificate of entry obtained. If public lands before the entry, after it they are private property....
>
> [I]f the party is entitled by law to enter the land, the receiver gives him a certificate of entry reciting the facts, by means of which, in due time, he receives a patent. The contract of purchase is complete when the certificate of entry is executed and delivered, and thereafter the land ceases to be a part of the public domain.

*Witherspoon v. Duncan, supra*, 71 U.S. (4 Wall.) at 218, 18 L.Ed. at 342.

The Colorado Supreme Court has also recognized this same definition of "entry" in homestead matters:

> But a homesteader, after entry, occupies an entirely different position. He has in fact purchased. His entry, which is made by making and filing an affidavit and pay-

ing the sum required by law, is a contract of purchase which gives him an inchoate title to the land, which is property.

*Korf v. Itten, supra*, 64 Colo. at 7–8, 169 P. at 150 (quoting *Stofferan v. Okanogan County*, 76 Wash. 265, 136 P. 484 (1913)).

■ Accordingly, we conclude that a homesteader's rights in land patented by him relate back to the time the homestead entry is properly filed with the appropriate government office.

Here, it is undisputed that John Bear executed his homestead entry on September 26, 1924, and that it was certified in the United States Land Office on November 23, 1926. We need not decide which of these dates constitutes the date of John Bear's homestead entry because both are subsequent to the establishment of the road on property that was then public land.

## II.

■ The Lees also contend that, because the Masners were aware of the uncertain status of the road when they purchased the property, their claims are precluded as a matter of law by the doctrines of self-imposed hardship and estoppel. We are not persuaded.

The Lees argue that, as a general principle of Colorado law, a party who creates his or her own hardship is precluded from seeking redress from the courts. The Lees have cited no authority, and we are aware of none, holding that self-imposed hardship is an absolute prohibition against seeking relief. The cases cited by the Lees all hold that self-imposed hardship is a factor to consider, but none recognizes it as an absolute prohibition. *See Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519 (Colo.1982); *Nirk v. City of Colorado Springs*, 174 Colo. 273, 483 P.2d 371 (1971); *Madis v. Higginson*, 164 Colo. 320, 434 P.2d 705 (1967); *Le Satz v. Deshotels*, 757 P.2d 1090 (Colo.App.1988).

Also, while the Lees contend that the Masners' claims are barred by the doctrine of

estoppel, they do not make any specific argument concerning this doctrine or its application here. Therefore, we reject the argument. *See Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991)(counsel must inform the court as to the specific errors relied upon, supporting facts in the record, and legal authority supporting the claims of error).

Accordingly, we perceive no error in the trial court's decision to address the Masners' claims.

The judgment is affirmed.

Judge TAUBMAN and Judge KAPELKE concur.