No. 14,075.

LEACH *v.* MANHART ET AL.
(77 P. [2d] 652)

Decided February 28, 1938. Rehearing denied April 4, 1938.

Mr. CLARENCE F. LEACH, pro se.

Mr. NEIL HORAN, for defendants in error.

Mr. J. M. TAYLOR, amicus curiae.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A SUIT by Elizabeth Manhart and M. Augusta Rhodes, defendants in error, to enjoin Clarence F. Leach, plaintiff in error, from using a "road through their properties

connecting with the Perry Park Public road," which, as said, they "have and maintain for their private use, for the purpose of ingress and egress." Leach, and the board of county commissioners of the county of Douglas (which intervened) claimed that the road in question was known as the "Garber Creek" road; that it extended from the West Plum Creek highway in a general westerly direction along Garber Creek, across the Manhart and Rhodes ranches; and that it was an established public highway and used by the public continuously since the lands over which it passes were part of the public domain. Leach and the county introduced to the record another road, known as the "Bee Rock" road, which extends from the Jarre Creek highway, southward, through lands of Manhart, and connects with the Jackson Creek public highway. It is alleged that the Bee Rock road was an established public highway and that it has been used by the public continuously since the lands over which it passes were part of the public domain; moreover, that Leach and the public had used both roads for more than twenty years prior to the interruption attempted by Manhart and Rhodes, and Leach prayed that they be enjoined from interfering with his and the public's right to the use of said roads. Issues were so framed that determination as to both roads was in order.

The prime question involves two elements: (1) Whether the so-called Garber Creek and Bee Rock roads were public roads in fact, and, if so, (2) whether they had inception prior to the entry of any of the lands owned by defendants in error which are crossed by them.

That the claimed roads existed and were in general use in the sixties and early seventies of the last century, was testified to by many witnesses, and field notes of the original government survey of the lands, burdened with the roads—made in 1866—refers to roads that, from the contour of the country, must have been the roads involved; and witnesses testifying as of twenty to forty years ago, told of the continued use of the roads. All

physical conditions indicated that the roads were very old, well marked, confined to reasonably certain and definite lines, and the courses followed were those naturally to have been pursued by travelers over public lands. Witnesses called in opposition either were uncertain as to the early existence of the roads, or testified that they were private rather than public ways. That the roads were increasingly used by the public as the country was settled, appeared from the testimony of many, including defendant in error Manhart, who complained of the heavy traffic, mentioning in her testimony that many automobiles and other vehicles were constantly passing to and fro on the roads near her buildings. The travel to which Mrs. Manhart testified, as seems clear, was that of the public, to which plaintiff in error contributed only negligibly. The notice which Mrs. Manhart gave preparatory to closing the roads, was addressed to plaintiff in error and the public, and her action in consummation of her declared purpose precipitated the controversy. What she sought, and what the judgment of the trial court accomplished, as we perceive, was the closing of roads over which the public, plaintiff in error included, was accustomed to travel, a custom seemingly enjoyed by the public for more than a half century. It is informative to record that the name Garber, attached to one of the roads, as well as to a creek in the vicinity, is a corruption of Gerber, the name of an early entryman to whom there is reference.

In relation to the entire area of land, the owners of which complain of the burden of the two roads involved, the United States Land Office records show that entry of but one portion thereof preceded their establishment, and neither road traverses that particular land. The entryman there was one Gottlieb Gerber, and he helped to create, and traveled over, the roads in question before the burdened lands were entered. We mention that Mrs. Manhart now owns the Gerber land, the importance of which situation will appear as we proceed.

The premises considered, we think a statute of the United States enacted in 1866 (R.S. §2477, U. S. Comp. Stat. 1918, §4919, Title 43, U.S.C.A. §932), reading as follows: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted," is controlling. We have had occasion to consider that statute in varying situations. See *Sprague v. Stead,* 56 Colo. 538, 139 Pac. 544; *Greiner v. Board County Commissioners,* 64 Colo. 584, 173 Pac. 719; *Dunbar v. Kohler,* 66 Colo. 272, 180 Pac. 739; *Nicolas v. Grassle,* 83 Colo. 536, 267 Pac. 196; *Korf v. Itten,* 64 Colo. 3, 169 Pac. 148. The sum of our holdings is that the statute is an express dedication of a right of way for roads over unappropriated government lands, acceptance of which by the public results from "use by those for whom it was necessary or convenient." It is not required that "work" shall be done on such a road, or that public authorities shall take action in the premises. User is the requisite element, and it may be by any who have occasion to travel over public lands, and if the use be by only one, still it suffices. "A road may be a highway though it reaches but one property owner. 29 C. J. 367. He has a right to access to other roads and the public has a right of access to him. *Pagels v. Oaks,* 64 Iowa 198, 19 N. W. 905, 907. Its character is not determined by the fact that but few persons use it." Mr. Chief Justice Denison, speaking for the court in *Nicolas v. Grassle, supra.* But, it seems, where before the time when a board of county commissioners, proceeding under '35 C.S.A., chapter 143, section 44 (C. L. 1921, section 1290), has declared a section line to be a public highway, the lands involved have been entered as homesteads, subsequent relinquishment of the entries does not operate to make effective the county board's declaration. *Korf v. Itten, supra.*

In the present case the trial court found that the roads had not been established while the lands they traversed were of the public domain; declined to require

defendants in error to allow public use thereof; and, moreover, enjoined plaintiff in error from such use. Considering that there is no material conflict in the testimony, and that all thereof indicates the roads existed before any of the lands owned by Manhart and Rhodes, save the Gerber entry, were entered, the court, although it does not so recite, must have proceeded on the theory that since the Gerber land is part of the Manhart ranch, the date of the Gerber entry controls as to Mrs. Manhart's entire holdings. Our conclusion as to the basis of the court's finding is consistent with the argument of counsel for defendants in error, for he emphasizes the date of the Gerber entry and none other. Thus predicated, we think the finding is without evidentiary support, for, as we have seen, the Gerber land is not burdened with the roads; hence the date of its entry is unimportant.

It was established that only by the right to travel the roads mentioned can plaintiff in error enjoy the reasonable use of his land, have access to other roads, and the public have access to him. Not until 1931, some sixty odd years after Gottlieb Gerber entered his land, in the use of which he traveled the roads in controversy across the public domain, as did the public generally, was there attempt to close the roads to the public and plaintiff in error. To permit their closing at this late day will work incalculable damage to plaintiff in error, and deny to the public a right it is entitled to enjoy. On the other hand, the continuance of the use of the roads is fraught with no serious consequences to any, the burden to the land owners being the same in kind as that assumed by first takers of the land when they made entry. See *Nicolas v. Grassle, supra.* The justice of the situation was recognized, but as we are persuaded the requirements were not met, by the court's order of right of easement to plaintiff in error over short reaches of the roads, controlled by gates. Besides, the easement order did not

contemplate use of the roads by the public, an element important to both it and plaintiff in error.

Since the case was lodged here, defendant in error Rhodes, stating that she did not authorize the use of her name in the institution of the suit or its prosecution, has filed a disclaimer in which she says that "she has never objected, and does not now object, to use by plaintiff in error, Clarence F. Leach, of the road which extends through her property." The record does not show that Mrs. Rhodes attended or took part in the trial of the suit. Therefore, and since neither plaintiff in error nor defendant in error Manhart, challenged Mrs. Rhodes' statement, we adopt her disclaimer and dismiss her from the proceeding; but we are pleased to record that counsel who has subscribed as attorney for Mrs. Manhart and Mrs. Rhodes, both at nisi and here, has amply shown that which justified him in believing he was authorized to appear for Mrs. Rhodes as well as for Mrs. Manhart. We absolve him from criticism.

Let the judgment be reversed, the trial court to enter judgment for plaintiff in error as to both the roads involved, requiring that they shall be open to the public as well, with gates eliminated. For the purpose of aid to the parties in ascertaining definite lines for the roads, the court will retain jurisdiction of the case, allowing them a reasonable time in which to accommodate diverse views they may entertain on the question, and if it shall appear they cannot agree on the point, the court will take testimony as to the issue and in the light thereof determine and adjudge the lines.

Let the costs in the trial court be taxed as there adjudged—parties to pay their own; but costs on error shall be adjudged against defendant in error Manhart.

Mr. Chief Justice Burke, Mr. Justice Bakke and Mr. Justice Holland concur.