**Ruth BARKER and William T. Stephens, Jr., Trustee of the Thomas W. Sefton Trust, Plaintiffs,**

v.

**THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA, COLORADO, Tom Henderson, the United States Forest Service, Theodore Levin and Pamela S. Levin, Seymour L. Gross and Elaine L. Gross, Ronald S. Shafer and Georgia G. Shafer, John H. Miller and Barbara C. Miller, Maxine Walker Perini, Donald L. Briggs, Berna Deane–Briggs, Nila Gaye Briggs Sterns, Donald Earl Briggs, Jason Edward Briggs and Ronald L. Enge, the Heirs of Reese McCloskey, Vincent Walker Perini, Frank Thomas Perini, Charles Whittling Perini, and All Unknown Persons Who Claim Any Interest in the Subject Matter of This Action, Defendants.**

No. CIV.A. 97–B–1912.

United States District Court,
D. Colorado.

Nov. 12, 1998.

William E. Zimsky, L.W. McDaniel, Durango, CO, for Plaintiffs.

Jeffrey P. Robbins, Michael McLachlan, Durango, CO, for Defts. La Plata County, Enge, Briggs, Sterns.

Fred C. Kuhlwilm, David Reese Miller, Denver, CO, for Deft. McCloskey.

Robert D. Clark, Assistant U.S. Attorney, Denver, CO, Helena Jones, U.S. Dept. of Agriculture, Lakewood, CO, for Deft. U.S. Forest Service.

Ted C. Wright, Durango, CO, for Defts. Gross and Levin.

Stephen D. Alfers, Craig R. Carver, Denver, CO, for Perini defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this action to quiet title to Lewis Creek Road in the County of La Plata, Colorado, plaintiff Ruth Barker ("Mrs. Barker") moves for partial summary judgment regarding the legal effect of Resolution 1976–84, adopted in 1976 by defendant Board of County Commissioners of the County of La Plata, Colorado ("the County"). Mrs. Barker also moves for partial summary judgment regarding whether defendants can demonstrate that Lewis Creek Road is a public road. Plaintiff William T. Stephens, Jr., Trustee of the Thomas W. Sefton Trust ("the Sefton Trust"), and defendants Vincent Walker Perini, Frank Thomas Perini, and Charles Whitling Perini (collectively, "the Perinis" or "the Perini defendants") join in Mrs. Barker's second motion for partial summary judgment. The Perinis also move for partial summary judgment regarding their ownership of a prescriptive easement to use Lewis Creek Road to access their patented mining claims. The Sefton Trust moves for entry of default and

default judgment against defendant United States Forest Service ("the Forest Service"). Lastly, the Perinis and Maxine Walker Perini move for her dismissal because she neither claims nor owns any right, title, or interest in Lewis Creek Road. The motions are adequately briefed and oral argument will not materially aid their resolution. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1442 & 2409a (1997).

For the reasons set forth below, I grant, as stipulated, Mrs. Barker's motion for partial summary judgment regarding the validity and legal effect of Resolution 1976–84. I deny Mrs. Barker's motion for partial summary judgment regarding the defendants' ability to show Lewis Creek Road is a public road. I also deny the Sefton Trust's motion for entry of default and default judgment. Lastly, I grant the Perinis motion for partial summary judgment and the motion to dismiss Maxine Walker Perini.

## I. PROCEDURAL HISTORY

Mrs. Barker commenced this quiet title action on May 8, 1997 in the District Court for the County of La Plata, Colorado. Mrs. Barker contends that Lewis Creek Road is private where it crosses her mining claims in La Plata County. The County and the Forest Service aver that the entirety of Lewis Creek Road is a public road.

In her original and amended complaints, Mrs. Barker named Thomas W. Sefton as a defendant. By written order entered on November 28, 1997, William T. Stephens, Jr., Trustee of the Thomas W. Sefton Trust, was substituted for Thomas W. Sefton. By written order entered on August 14, 1998, the Sefton Trust was re-aligned and became a named plaintiff. Like Mrs. Barker, the Sefton Trust contends that Lewis Creek Road is private where it traverses the trust's mining claims. The Sefton Trust does not contest the rights claimed by Mrs. Barker.

The Perinis, owners of patented mining claims, claim a right to use the entirety of Lewis Creek Road. The Perinis claim they acquired, pursuant to federal mining laws, the right to use those portions of the road that traverse public lands administered by the Forest Service. The Perinis' further claim they acquired, by prescriptive use, the right to use those portions of the road that traverse private lands. All parties recognize the validity of the Perinis' claimed prescriptive right of use.

The heirs of Reese McCloskey ("the heirs of McCloskey"), also owners of mining claims, contend that the entirety of Lewis Creek Road is privately-owned. They allege that they acquired, by prescriptive use, the right to use that portion of Lewis Creek Road that runs from County Road 124 to Walls Gulch.

Default judgment entered on October 23, 1998 against defendants Tom Henderson, Theodore Levin, Pamela S. Levin, Seymour L. Gross, Elaine L. Gross, Ronald S. Shafer, Georgia G. Shafer, John H. Miller, Barbara C. Miller, and all unknown persons who claim any interest in the subject matter of this action ("the defaulting defendants"). The default judgment declares that the defaulting defendants have "no right, title, or interest in the real property that is the subject of this quiet title action." The default judgment, therefore, applies to all claims, cross-claims, and counterclaims against the defaulting defendants.

## II. FACTS

The following facts are undisputed unless otherwise noted. Lewis Creek Road is located within a remote area of the San Juan National Forest, approximately 22 miles from Durango, Colorado. It begins at County Road 124, also known as La Plata Canyon Road. The terrain is steep and mountainous. From its junction with County Road 124, Lewis Creek Road runs approximately 3½ miles in an easterly direction to the summit of Eagle Pass. Lewis Creek Road then continues 1 mile down the eastern side of Eagle Pass to a dead-end. It traverses public land within the San Juan National Forest, as well as several privately-owned mining claims.

Mrs. Barker owns three mining claims, the Bonanza Extension Lode Mining Claim, the Eagle Pass Mining Claim, and the Eureka Mining Claim (collectively, "the Barker Claims"). The heirs of McCloskey own the Barnagatt Mill Site, the Barnagatt No. 2 Mill Site, and the Crete Mining Claim (collectively, "the McCloskey Claims"). The Sefton Trust owns the Flying Swede Mining Claim

and the Terrible Swede Mining Claim (collectively, "the Sefton Claims"). The Perinis own the Ashland Lode, the Parole # 2 Lode, the Sylvan # 2 Lode, the Ten Broeck Lode, the Parole Ext Lode, the Brawner Lode, the Durango Girl Lode, and the New Hope Lode (collectively, "the Perini Claims"). The Briggs own the Gold King Mining Claim ("the Briggs Claim"). Lewis Creek Road crosses through the Barker Claims. The McCloskey Claims, the Sefton Claims, the Perini Claims, and the Briggs Claim abut or are accessed from Lewis Creek Road. (Pretrial Ord. of 10/29/98 at 7.)

The Perinis or their predecessors in title have used Lewis Creek Road, including those portions that cross the Barker Claims and public lands, to access the Perini Claims since 1883 when the Ashland–Ten Broeck Mine commenced operations. They also used Lewis Creek Road to access the New Hope and Durango Girl Mines beginning in 1893. The parties concede that, because of such historic use by the Perinis or their predecessors in title, the Perinis acquired a non-exclusive prescriptive easement to use the Lewis Creek Road from its origin at County Road 124 to its dead-end on the other side of Eagle Pass, including those portions of the road that cross the Barker Claims and public lands. (Pretrial Ord. of 10/29/98 at 8.)

### III. SUMMARY JUDGMENT LEGAL STANDARDS

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that issues of undetermined material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971

F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494.

### IV. ANALYSIS OF MRS. BARKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE LEGAL EFFECT OF RESOLUTION NO.1976–84

Mrs. Barker filed a motion for partial summary judgment on February 19, 1998, arguing that the County had no legal authority to declare by resolution that Lewis Creek Road is a public road. After a public hearing held on September 8, 1976, the County adopted Resolution No.1976–84. That Resolution states, in relevant part:

WHEREAS, C.R.S.1973 43–2–101 provides that a County shall adopt an official road map of the County establishing a County road system; and,

WHEREAS, certain changes have been made to the County road system warranting a new map; and,

WHEREAS, a public hearing was held on September 8, 1976 for the purposes of adopting an official County road map designating primary and secondary roads for the County of La Plata; and,

WHEREAS, such hearing was held as required by law; and,

WHEREAS, at such hearing a proposed County road map was introduced into evidence; and,

WHEREAS, various people appeared to testify concerning the public uses of the road commonly known as Louis [sic] Creek Road; and,

WHEREAS, the Commissioners considered all of the evidence concerning the Louis [sic] Creek Road and found that from the testimony it has been openly, notoriously and adversely used without interruption or objections on the part of the owners of such lands for a consecutive period in excess of twenty (20) years by the public and should be considered a public road and should be made a part of the County road system.

NOW, THEREFORE, BE IT RESOLVED that the new official County road map, marked Exhibit "A" and attached hereto, shall be accepted by the County of La Plata and that all roads showing thereon shall become part of the County road system.

BE IT FURTHER RESOLVED that there was sufficient evidence established that the Louis [sic] Creek Road was open to the public and used by the public for a least twenty (20) consecutive years and that a proportion [sic] of Louis [sic] Creek Road extending from the existing County road to the top of Eagle Pass shall be considered as a public road and a County road and that such road shall be maintained by the United State's [sic] Forest Service under a road maintenance agreement.

(Resolution No.1976–84 of 9/21/76, Ex. 2 of Barker Mot. for Summ. J. of 2/19/98.) On October 20, 1981, the County adopted Resolution No.1981–86, which states in relevant part:

WHEREAS, La Plata Canyon Road, also designated as county Road 124, is on the County Road System and is maintained by La Plata County to the Gold King Mine turnaround, being a distance of approximately 7.0 miles from the junction of County Road 124 and U.S. Highway 160, and

WHEREAS, jurisdiction over the continuation of County Road 124 from the Gold King Mine turnaround to Kennebec Pass, a distance of approximately 7.5 miles, is vested in the Board of County Commissioners of La Plata County, and

WHEREAS, the Lewis Creek Road, also known as County Road 124–A, being a road approximately 2.8 miles in length, extending easterly from its junction with the La Plata Canyon Road, said junction being located approximately 0.3 miles north of the Gold King Mine turnaround, is likewise a public highway with jurisdiction over same being vested in the Board of County Commissioners, and

WHEREAS, the United States Forest Service has expressed a desire to provide maintenance of said roads, subject to the availability of funds, men, and equipment, said maintenance being performed during the summer months, and

WHEREAS, it is necessary that the Board of County Commissioners grant to the United States Forest Service authority to so maintain said roads,

NOW, THEREFORE, BE IT RESOLVED:

1. The United States Forest Service is hereby authorized to maintain the La Plata Canyon Road north of the Gold King Mine turnaround and the Lewis Creek Road, both as herein described.

2. Said maintenance shall be performed entirely at the cost of the United States Forest Service, and the United States Forest Service shall employ such monies, men, and equipment as it sees fit in said maintenance.

(Resolution No.1981–86, Ex. R of Forest Serv. Resp. of 10/6/98.)

■ Mrs. Barker contends that Resolution No.1976–84 is void and without any legal

effect. The Forest Service responded, conceding that Resolution No.1976–84 and Resolution No.1981–86 do not, standing alone, make Lewis Creek Road a public or county road. The County has adopted the Forest Service's concession. Both the County and the Forest Service assert, however, that the public's use of the Lewis Creek Road after the enactment of Resolution No.1976–84 was open, notorious, and adverse to the interests of Mrs. Barker and the other landowners whose land is traversed by the road. (Forest Service Resp. of 3/12/98 at 3 (citing *Board of County Comm'rs for Garfield County v. W.H.I., Inc.,* 992 F.2d 1061 (10th Cir.1993)); County Resp. of 4/8/98 at 1 (also citing *W.H.I.*).)

Under Colorado law, public highways include "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such land for twenty consecutive years." C.R.S. § 43–2–201(1)(c) (1997). In *W.H.I.,* the Tenth Circuit Court of Appeals held that the twenty-year period for establishing adverse possession begins to run no later than the date a county enacts resolutions similar to those here. *W.H.I.,* 992 F.2d at 1066. *See also Board of County Comm'rs of Cheyenne County v. Ritchey,* 888 P.2d 298, 300 (Colo. App.1994) (1887 county resolution asserting county ownership of land constitutes evidence of hostile and adverse possession under C.R.S. § 42–2–201(1)(c)). Here, the text of Resolution No.1976–84 and Resolution No.1981–86 clearly declare the County's intention to claim Lewis Creek Road as a public right-of-way. Therefore, I cannot conclude that Resolution No.1976–84 is "without any legal effect."

On September 2, 1998, Mrs. Barker and the County entered into a stipulation regarding the legal effect of Resolution 1976–84. The Forest Service is not a party to the stipulation. It states, in relevant part:

... Resolution 1976–84 does not, standing alone, render the road public pursuant to C.R.S. § 13–2–201(1)(c). However, the Resolution establishes that, as a matter of law, from the date of its enactment, September 21, 1976, any public use of the road without the permission of the private landowners was open, notorious and adverse to the private landowners and, that since the date of its enactment all subsequent public use, if any, has been adverse to the private landowners. *Board of County Commissioners vs. W.H.I., Inc.,* 992 F.2d 1061, 1066 (10th Cir.1993.)

\* \* \* \* \* \*

... Plaintiff and Defendant Board of County Commissioners of La Plata County, Colorado further stipulate that the Court, if it is so inclined, may grant Plaintiff's Motion for Partial Summary Judgment by entering an Order incorporating the above stipulated agreement ....

(Joint Stipulation of 9/2/98.) Although the Forest Service is not a party to this stipulation, the Forest Service's position, as stated in its response brief, is consistent with the language of the stipulation. Moreover, the same stipulation is repeated in the pretrial order signed by counsel for the Forest Service. (Pretrial Ord. of 10/29/98 at 8.) Accordingly, I grant, as stipulated, Mrs. Barker's motion for partial summary judgment regarding the legal effect of Resolution 1976–84.

## V. ANALYSIS OF MRS. BARKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING WHETHER LEWIS CREEK ROAD IS A PUBLIC ROAD

Mrs. Barker next moves for partial summary judgment regarding the defendants' ability to show Lewis Creek Road is public. The Sefton Trust and the Perinis join in this motion. The Forest Service and the County object to the Perinis' joinder, arguing that the Perinis filed their motion and supporting brief several weeks after the deadline for filing dispositive motions. Because Mrs. Barker filed her second motion before the deadline expired, I exercise discretion to allow the Perinis' joinder in Mrs. Barker's second motion. I agree with the Forest Service and the County, however, that the Perinis' brief in support of Mrs. Barker's second motion contains additional argument and information beyond the scope of Mrs. Barker's second motion. Accordingly, I limit the Perinis' joinder to the arguments made by Mrs. Barker in her second motion and strike the Perinis' brief.

In support of their contention that Lewis Creek Road is public, the Forest Service and the County offer three alternative arguments derived from three different statutes. First, the Forest Service and the County maintain that Lewis Creek Road is a public road under Revised Statute 2477 ("R.S. 2477"), by which Congress granted the right-of-way for construction of public roads over public lands. Second, the Forest Service and the County contend that Lewis Creek Road is a public road by adverse possession pursuant to C.R.S. § 43–2–201(1)(c). Lastly, the County, but not the Forest Service, contends that Lewis Creek Road is public by operation of C.R.S. § 43–1–202, which declares as "public highways" all roads and highways open to public traffic on May 4, 1921. In her second motion for partial summary judgment, Mrs. Barker attacks only the first two statutory grounds upon which the Forest Service and the County rely. I address each statute separately.

### a. Public Use Under R.S. 2477

■ R.S. 2477 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (1866) (formerly codified at 43 U.S.C. § 932), *repealed by* Federal Land Policy Management Act ("FLPMA"), Pub.L. No. 94–579, § 706(a), 90 Stat. 2743, 2793 (1976). Though Congress repealed R.S. 2477, the FLPMA preserved any rights-of-way that existed before October 21, 1976. 43 U.S.C. § 1769(a). Whether and when the offer of grant is accepted by the public are questions resolved by state law. *Sierra Club v. Hodel*, 675 F.Supp. 594, 604 (D.Utah 1987), *rev'd in part on other grounds*, 848 F.2d 1068 (10th Cir.1988); *Wilkenson v. Dep't of Interior*, 634 F.Supp. 1265, 1272 (D.Colo.1986); *United States v. Jenks*, 804 F.Supp. 232, 235 (D.N.M.1992), *rev'd in part on other grounds*, 22 F.3d 1513 (10th Cir.1994).

■ Colorado courts have interpreted R.S. 2477 as "an express dedication for a right of way for a road over the land belonging to the government not reserved for a public use." *Sprague v. Stead*, 56 Colo. 538, 543, 139 P. 544, 545 (1914). In *Leach v. Manhart*, 102 Colo. 129, 77 P.2d 652 (1938), the Colorado Supreme Court described how the public could have accepted the Congressional grant:

> We have had occasion to consider [R.S. 2477] ... in varying situations. The sum of our holdings is that the statute is an express dedication of a right of way for roads over unappropriated government lands, acceptance of which by the public results from use by those for whom it was necessary or convenient. It is not required that work shall be done on such a road, or that public authorities shall take action in the premises. User is the requisite element, and it may be by any who have occasion to travel over public lands, and if the use be by only one, still it suffices. A road may be a highway though it reaches but one property owner. He has a right to access to other roads and the public has a right of access to him. Its character is not determined by the fact that but few persons use it.

*Id.* at 133, 77 P.2d at 653 (internal quotations and citations omitted) (quoted with approval in *Brown v. Jolley*, 153 Colo. 530, 537, 387 P.2d 278, 281–282 (Colo.1963)). Of course, such use must occur before the land in question is withdrawn from the public domain or included within a reserve. *See, e.g., Jenks*, 804 F.Supp. at 235–236 (roads created after Presidential proclamation reserved land as national forest were not public roads under R.S. 2477); *Nicolas v. Grassle*, 83 Colo. 536, 537, 267 P. 196, 197 (1928) (public right-of-of way under R.S. 2477 perfected before homestead entrymen took title); *Greiner v. Board of Comm'rs of Park County*, 64 Colo. 584, 587, 173 P. 719, 720 (1918) (public right-of-way perfected under R.S. 2477 before land reserved for school purposes); *Korf v. Itten*, 64 Colo. 3, 7–8, 169 P. 148, 150 (1917) (board of county commissioners' order declaring certain section lines as public highways did not affect the lands for which homestead entry filings existed); *Sprague*, 56 Colo. at 543, 139 P. at 546 ("subsequent entrymen and claimants" take land subject to rights-of-way created under R.S. 2477). "Public land, or land on the public domain, is land which is open to sale or other disposition under general laws." *Ritchey*, 888 P.2d at 299; *accord Ute Indian Tribe v. State of Utah*, 716 F.2d 1298, 1305

(10th Cir.1983) (creation of an Indian reservation or a forest or other particular use from public land removes it from the public domain). Thus, any land to which any claims or rights of others have attached does not fall within the designation of land on the public domain. *Bardon v. Northern Pac. R.R. Co.*, 145 U.S. 535, 539, 12 S.Ct. 856, 36 L.Ed. 806 (1892).

■ Applying these established legal principles to this case, the Forest Service and the County must establish public use, as described in *Leach*, of Lewis Creek Road where it crosses the Barker Claims before the Barker Claims were removed from the public domain. It is undisputed that the portion of the San Juan National Forest through which Lewis Creek Road traverses became part of the national forest reserve on June 13, 1905 by Presidential proclamation. (Proclamation of President Theodore Roosevelt, Ex. D to the Forest Service's Resp. Brf. of 10/6/98.) Thus, the land at issue was withdrawn from the public domain, at the very latest, in 1905. At least two of the three Barker Claims, however, were withdrawn before 1905. It is undisputed that Mrs. Barker's Eureka Mining Claim was patented on February 27, 1883. It is also undisputed that Mrs. Barker's Eagle Pass Mining Claim was patented on December 8, 1890. Apparently, no patent exists for Mrs. Barker's third claim, the Bonanza Extension Lode Mining Claim. Contrary to Mrs. Barker's contentions, however, the date of a patent's issuance is not necessarily the date the land is withdrawn from the public domain; indeed, it may be an earlier date. *See, e.g., Benson Mining & Smelting Co. v. Alta Mining & Smelting Co.*, 145 U.S. 428, 431–432, 12 S.Ct. 877, 36 L.Ed. 762 (1892) (discussing the differences between patented and unpatented mining claims) (holding that a patent, when issued, relates back to the date of the inception of the rights of the patentee in the land); *Witherspoon v. Duncan*, 71 U.S. (4 Wall.) 210, 216, 18 L.Ed. 339 (1866) (once entry is made and certificate is delivered, land ceases to be a part of the public domain); *Ritchey*, 888 P.2d at 300 (date of filing of plat, rather than date of patent's issuance by the President, constitutes effective date of land's withdrawal from public domain).

■ A crucial question remains: did the public use Lewis Creek Road before the land at issue was withdrawn from the public domain? The Forest Service offers historical maps and historical papers, as well as expert reports, showing or opining as to the existence of a road in the vicinity of the present-day road since the late 1800's. (Affs. of Bell, Exs. F, G, H & I to the Forest Service's Resp. Brf. of 10/6/98.) Mrs. Barker identifies the issuance dates of her mining claim patents as dates which would peg when the Barker Claims were withdrawn from the public domain. On the record before me, however, the genuine issue of material fact remains whether the public used Lewis Creek Road, or its equivalent, before the land on which it traverses was withdrawn from the public domain. Thus, viewing the evidence in a light most favorable to the Forest Service and the County, summary judgment is inappropriate.

Another unanswered question pertains to the effect of improvements made to Lewis Creek Road during 1953 and 1954. Mrs. Barker offers testimony of Chester Steward who states that he knows of, or directly participated in, the improvement or new construction of various segments of Lewis Creek Road during 1953 and 1954. (Aff. of Steward ¶ 3, Ex. 1 to Barker Opening Brf. of 9/3/98; Depo. of Steward at 8, 10, 52, 59, Ex. 2. to Barker Opening Brf. of 9/3/98.) Based primarily on his testimony, Mrs. Barker argues that R.S. 2477 is inapplicable because the disputed portions of Lewis Creek Road did not exist until the 1950's and, therefore, it could not have been used by the public before its withdrawal from the public domain. (Barker Reply Brf. of 10/28/98 at 2.) The Forest Service and the County respond that the improvements of 1953 and 1954 did not materially change the path of Lewis Creek Road and, therefore, the public right-of-way obtained under R.S. 2477 applies equally to the road after its improvement in 1953 and 1954. In support of their response, the Forest Service and the County offer the testimony of two expert witnesses who reportedly conducted detailed research of the past and present locations of Lewis Creek Road. They opine that Lewis Creek Road now follows substantially the same path as it did before

1953. (Aff. of Bell, Report of Bell of 6/18/98 & Report of Gash of 5/28/98, Exs. I, AA & BB, respectively, to the Forest Service's Resp. Brf. of 10/6/98.) In her reply brief, Mrs. Barker concedes that a genuine issue of material fact exists regarding the past and present locations of Lewis Creek Road. (Barker Reply Brf. of 10/28/98 at 7.) Accordingly, summary judgment is inappropriate as to the defendants' ability to show that Lewis Creek Road is a public road under R.S. 2477.

### b. Prescription Under § 201(1)(c)

The Forest Service and the County also rely on § 201(1)(c), which declares that public highways include "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such land for twenty consecutive years." C.R.S. § 43–2–201(1)(c) (1997). One claiming title by adverse possession has the burden of proving the claim by a preponderance of the evidence. *Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989). To acquire land by adverse possession, one must prove possession of the disputed parcel for the statutory period and that this possession was hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted. *Ritchey,* 888 P.2d at 300. A showing of force or actual dispute is not necessary to constitute hostile entry or to lay a foundation for a claim of adverse possession. All that is required to establish hostility is that the person claiming adverse possession occupy the property adversely to the rights of the record holder. *Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 10, 458 P.2d 756, 758 (1969).

The Forest Service and the County offer extensive evidence of the public's use of Lewis Creek Road during this century. (Aff. of Charles Perini, Ex. 2 to the Perinis' Brf. of 9/3/98; Depo. of Steward at 44–49, Aff. of Price, Aff. of Blake, Depo. of Slade at 6–7, Depo. of Weaver at 6–8, Depo. of Sefton at 14–18, Aff. of Ferguson, Exs. N, T, U, V, W, M & Y, respectively, to the Forest Service's Resp. Brf. of 10/6/98; Transcript of 1976 Hearing and Letters Submitted During Hearing, Exs. O & P, respectively, to the Forest Service's Resp. Brf. of 10/6/98.) Focusing on whether such use was interrupted, Mrs. Barker offers evidence showing that she or her husband maintained a locked cable or

gate across Lewis Creek Road beginning in 1974 and continuing through the present. (Depo. of McNeil at 3, 8–9, Depo. of Bell at 6, 8–9, 12, Exs. 7 & 8 to Barker Opening Brf. of 9/3/98; Transcript of 1976 Hearing at 12–13, Ex. H to the County's Resp. Brf. of 10/6/98.) The Forest Service does not dispute the existence of a locked cable or gate across Lewis Creek Road beginning in 1974. Yet the County offers the testimony of one witness who does not recall seeing a gate or cable blocking access to Lewis Creek Road during his recreational use "throughout the 1950s, 1960s and *1970s.*" (Aff. of Price, Ex. A to the County's Resp. Brf. of 10/6/98 (emphasis added).) Thus, a genuine issue of material fact exists as to when, and if, the interruption began. Of course, if the Forest Service and the County can establish adverse possession before Mrs. Barker's husband purchased the Barker Claims in 1974, the erection of a barricade beginning in 1974 is irrelevant. *See Doty v. Chalk,* 632 P.2d 644, 646 (Colo.App. 1981) (title to property acquired by adverse possession matures into absolute fee interest after the statutory prescriptive period has expired).

Attempting to narrow the period of potential adverse possession, Mrs. Barker also argues that the disputed portions of Lewis Creek Road did not exist until 1953 and 1954. Again, as noted above, Mrs. Barker concedes in her reply brief that genuine issues of material fact exist as to whether the construction and improvements made during 1953 and 1954 followed the same "reasonably certain and definite line" as the road that existed before 1953. Accordingly, the Forest Service and the County are not, as a matter of law, limited to showing adverse possession after 1953 and summary judgment is inappropriate on this issue.

Lastly with respect to her second motion, Mrs. Barker argues that the use of a road or footpath across vacant, unoccupied, unenclosed, and unimproved land is permissive use. In support of this contention, Mrs. Barker cites *Simon v. Pettit ("Simon II"),* 687 P.2d 1299, 1301 (Colo.1984). In *Simon II,* the plaintiffs sought a declaration that two footpaths, each 18 inches wide with definite and specific lines that traversed the

defendants' lands, were public highways by virtue of adverse possession under § 201(1)(c). The jury found that the footpaths had been used by the public for twenty consecutive years and that the use was actual, visual, hostile, and with the implied permission of the owners as evidenced by their silent acquiescence. The Colorado Court of Appeals reversed the district court's judgment, which declared the footpaths public highways, ruling that because the land involved was vacant, unenclosed, and unoccupied, the presumption that the use was adverse did not apply. *Simon v. Pettit ("Simon I")*, 651 P.2d 418, 420 (Colo. App.1982) (collecting cases). Implicit in its holding is the Court of Appeals' recognition that the counter-presumption of permissive use of unenclosed lands for passage, which was un-rebutted, controlled. *Id.* at 421. Moreover, the countervailing nature of these two presumptions was again recognized after *Simon II* in *Durbin v. Bonanza Corp.*, 716 P.2d 1124, 1129 (Colo.App.1986).

The Colorado Supreme Court granted certiorari to review the Court of Appeals' decision that the footpaths were "roads" under § 201(1)(c). *Simon II*, 687 P.2d at 1299. The Colorado Supreme Court, reaffirming an earlier decision "that the scope to be given the word ['road'] depends upon the context in which it appears," *see Hale v. Sullivan*, 146 Colo. 512, 518, 362 P.2d 402, 405 (1961), indicated that it did "not believe that the legislature intended an eighteen-inch footpath in a populated, residential, urban area to be considered a 'road' so as to permit it to be declared a public highway." *Simon II*, 687 P.2d at 1302. The Colorado Supreme Court, noting that it resolved the appeal on the issue of whether the footpaths qualify as roads under § 201(1)(c), declined to review the Colorado Court of Appeals' decision that the presumption of adverse use does not apply to vacant, unenclosed, and unoccupied land. *Simon II*, 687 P.2d at 1304. I presume, therefore, that Mrs. Barker intended to cite *Simon I*, rather than *Simon II*, in support of her contention that the use of a Lewis Creek Road was permissive rather than adverse.

■ The Forest Service and the County respond that the mining claims traversed by Lewis Creek Road were used extensively and continuously by their owners for prospecting, recreation, hunting, vacationing, and commercial enterprise. Further, some of the owners erected structures on their claims, such as cabins. (Depo. of Perini at 13, 34, Depo. of E.T. Barker at 13–14, 18, 22, Depo. of Barry Barker at 10, 16–17, Depo. of Harley Sefton at 11–14; Ex. L, K, J & M, respectively, of the Forest Service's Resp. Brf. of 10/6/98.) Genuine issues of material fact exist, therefore, regarding whether the land in question is, and was, vacant, unoccupied, unenclosed, and unimproved. Resolution of these issues will likely require parcel-by-parcel study, for each owner's use of their land has varied.

■ Even if the land in question was vacant, unoccupied, unenclosed, and unimproved as Mrs. Barker suggests, she would not be entitled to summary judgment. The presumption of adverse use, as well as the presumption of permissive use, are rebuttable, not conclusive presumptions. *Durbin*, 716 P.2d at 1129. Each presumption may be overcome by competent evidence.

■ Lastly, and for purposes of clarity and finality, I reject the argument of the Forest Service and the County regarding the inapplicability of the presumption of permissive use. If it is eventually shown that the land in question was vacant, unoccupied, unenclosed, and unimproved, then the rebuttable presumption of permissive use shall apply in this case. I am unpersuaded by the Forest Service's and the County's contention that the rule of law established in *Simon I* should not apply to the steep terrain at issue here. *Simon I*, and the cases upon which it relies as persuasive guidance, make no exception for steep terrain. Landowners can, and often do, erect fences on steep terrain.

In summary, genuine issues of material fact exist regarding the defendants' ability to show Lewis Creek Road is public. The theories advanced by the Forest Service and the County remain viable, including their reliance on R.S. 2477 and § 201(1)(c). The cases discussed above, the contradictory evidence offered, and the complex nature of this case counsel against summary judgment on such theories. Resolution of this case will likely require parcel-by-parcel analysis in light of

the precise elements of each legal theory. In their dispositive motions, the parties seem to have lost sight of these important concerns. The law simply does not permit me to treat different and varying parcels of land as the same for purposes of R.S. 2477, § 201(1)(c), or any other theory of public or private ownership.

## VI. ANALYSIS OF THE SEFTON TRUST'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST THE FOREST SERVICE

By a written order entered on August 14, 1998, the Sefton Trust was re-aligned and became a named plaintiff. Before the Sefton Trust was re-aligned and became a named plaintiff, it filed a cross-claim for declaratory relief against all defendants, seeking a declaration that Lewis Creek Road, in its entirety, is a private road. (Answer and Cross Claim of 11/26/97.) The Forest Service never filed a formal answer to the Sefton Trust's cross-claim.

 A trial court is vested with broad discretion in deciding whether to enter default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir.1987). Rule 55(e), applicable here, restricts the availability of default judgments against agencies of the United States of America. It states that "[n]o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." Fed.R.Civ.P. 55(e). This rule derives from the rationale that "the taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant." *Campbell v. Eastland*, 307 F.2d 478, 491 (5th Cir.1962). Based on this rationale, courts have construed this section liberally, refusing to enter default where the government has failed timely to plead or otherwise defend, or setting aside such default on motion by the government. Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2702. *See also Anderson v. Federal Bureau of Prisons*, 107 F.3d 880, 1997 WL 121213, *2 (10th Cir.1997) (unpublished opinion) (attached to this order in accordance with the Tenth Circuit's General Order of November 29, 1993) (government did not abandon action when it timely responded to a litigant's motion for summary judgment); *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir.1977) (district court's refusal to enter default was not abuse of discretion where government responded promptly to motion for default judgment). And, critically, entry of default is appropriate only "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend.*" Fed.R.Civ.P. 55(a) (emphasis added).

 Default judgment is inappropriate under the circumstances of this case. The Forest Service began its vigorous defense of this action on September 3, 1997, nearly three months before the Sefton Trust entered its appearance on November 26, 1997. The Sefton Trust's claims parallel those of Mrs. Barker, which the Forest Service answered in a timely manner. The Forest Service also responded timely to three separate motions for summary judgment, including Mrs. Barker's second motion for summary judgment in which the Sefton Trust joined. Moreover, the Sefton Trust is not prejudiced by having to prosecute its claims at trial when it has known for several months of the Forest Service's defenses and intent to assert such defenses at trial. Further, the Sefton Trust filed its motion for default judgment after the deadline for dispositive motions. Finally, the October 29, 1998 controlling pretrial order setting forth the Forest Service's defenses, approved by counsel for the Sefton Trust, makes no issue of Forest Service default. Accordingly, I conclude that the Sefton Trust's motion for default judgment is without merit.

## VII. ANALYSIS OF THE PERINIS' MOTION FOR PARTIAL SUMMARY JUDGMENT

 The Perinis request the issuance of an order declaring that they are owners of a non-exclusive easement for access to the Perini Claims, which easement includes:

> ... that portion of the Lewis Creek Road that runs through the properties owned by Plaintiff Ruth Barker and other Defendants, including the Defendant United

States. Further, the Perinis move the court to declare that the Perinis non-exclusive easement is for all lawful purposes, including, without limitation, the easement and right-of-way, and the right to vary the use to a reasonable extent, for all lawful purposes, including, without limitation, for the exploration, development, mining, haulage of timber, equipment, supplies, ores, and any and all purposes incidental thereto.

(Perinis' Mot. for Summ. J. of 9/3/98 at 10–11.) The County, Mrs. Barker, the Sefton Trust, the Briggs, and the heirs of McCloskey do not object to the Perinis' motion. The Forest Service filed a response to the Perinis' motion for partial summary judgment, contending that: (1) if the entire length of Lewis Creek Road is declared to be a public road, then the Forest Service lacks the legal authority to regulate use of the road by the Perinis or anyone else; and (2) if the plaintiffs prevail and Lewis Creek Road is declared private as to those sections of the road that cross patented mining claims, then the Forest Service reserves the right to reasonably regulate those portions of the road that cross public land. The Forest Service, envisioning only two possible outcomes of this case, focuses on its ability to regulate those portions of Lewis Creek Road that cross public land.

The pretrial order, entered on October 29, 1998 and after the Forest Service responded to the Perinis' motion, contains the following stipulations:

The Perinis and/or their predecessors in title have used Lewis Creek Road from the junction with County Road 124 over Eagle Pass for access to the Perini Claims, or some of them, beginning with the operation of the Ashland–Ten Broeck Mine in 1883, the New Hope Mine and the Durango Girl Mine in 1893. The Perinis and/or their predecessors have used Lewis Creek Road, including that portion over public lands administered by the United States Forest Service, and including that portion of the Lewis Creek Road that runs through the Plaintiff Ruth Barker's Subject Property. The Perinis have used the road for the exploration, development, and mining, haulage of timber, equipment, sup-

plies, ores, and purposes incidental thereto.

The Perini Brothers and/or their predecessors in title, acquired said non-exclusive prescriptive easement to use the Lewis Creek Road which starts at County Road 124, also known as La Plata Canyon Road, from the junction with County Road 124, over Eagle Pass, including that portion of Lewis Creek Road that runs through the Barker/Subject Property to access the Perini Claims or any of them for all lawful purposes to access their respective mining claims, including, without limitation, the easement and right of way, and the right to vary their use to a reasonable extent, for the exploration, development, and mining, haulage of timber, equipment, supplies, ores, and any and all purposes incidental thereto. The Perinis and/or their predecessors in interest have acquired such prescriptive easements through their use that was continuous, open, notorious, hostile and adverse to the interest of all Defendants and Ruth Barker and her or their predecessors in interest, for a period in excess of twenty (20) years, curing which time the Perinis and their predecessors in interests have used the Lewis Creek Road on a regular basis.

(Pretrial Ord. of 10/29/98 at 8.) These stipulations, read together, concede the relief requested by the Perinis. The pretrial order is signed by each party's counsel, including counsel for the Forest Service.

Although the Forest Service is apparently concerned about its ability to regulate those portions of Lewis Creek Road that cross public land, the nature of the parties' rights will determine their ability, or inability, to control others' use of Lewis Creek Road. While the Perinis' claimed easement will be of no import if the road is deemed public, the existence of such non-exclusive easement could affect the respective rights of the Forest Service and the Perinis if the entirety of the road is not deemed public. Thus, I fail to see how the Forest Service could stipulate to the existence of such easement when it is well-recognized that private individuals may not possess adversely against the government. *See United States v. Osterlund,* 505

F.Supp. 165, 168 (D.Colo.1981); *Omaha & Grant Smelting & Refining Co. v. Tabor*, 13 Colo. 41, 53, 21 P. 925, 929 (1889). Notably, if Lewis Creek Road became a public right-of-way under R.S. 2477 before adverse use by the Perinis' predecessors in interest ripened into an absolute fee interest, such adverse use is irrelevant. Likewise, if such adverse use did not ripen into an absolute fee interest before 1905, the inclusion of much of the land within the forest reserve would have permanently tolled the then-applicable required time of possession. I assume, therefore, that the Forest Service has stipulated to the existence of the Perinis' easement only because such stipulation is consistent with the Forest Service's position that Lewis Creek Road is public and therefore available to all. At this juncture, it is sufficient that the Forest Service recognizes that the Perinis have acquired at least a non-exclusive right to use the entirety of Lewis Creek Road. Accordingly, I grant the Perinis' motion for partial summary judgment, noting the Forest Service's reservation of its rights to regulate the use of Lewis Creek Road to the extent permitted by law. Such regulation, however, is not a question before me.

## VIII. ANALYSIS OF THE MOTION TO DISMISS MAXINE WALKER PERINI

The Perinis and Maxine Walker Perini jointly move for her dismissal because she claims no right, title, or interest in the subject matter of this lawsuit. Although Maxine Walker Perini once owned all or part of the Perini Claims, she no longer holds any interest in such claims. No other party objects to her dismissal and, therefore, I grant the motion.

Accordingly, I ORDER that:

(1) plaintiff Ruth Barker's motion for summary judgment regarding the legal effect of County Resolution No.1976–84 is GRANTED as stipulated; Resolution No.1976–84 does not, standing alone, render Lewis Creek Road public pursuant to C.R.S. § 43–2–201(1)(c); nonetheless, Resolution No.1976–84 establishes that, as a matter of law, any public use of Lewis Creek Road without the permission of the private landowners after September 21, 1976 was open, notorious, and adverse to those private landowners;

(2) plaintiff Ruth Barker's motion for summary judgment regarding the defendants' ability to show Lewis Creek Road is public is DENIED; the Perini defendants' joinder in such motion is PERMITTED but the Perinis' brief in support of such joinder, filed on September 24, 1998, is STRICKEN;

(3) the Perini defendants' motion for summary judgment regarding their acquisition of a non-exclusive prescriptive easement to use Lewis Creek Road is GRANTED as stipulated by the parties in the pretrial order; the Forest Service's reservation of its rights to regulate the use of the road by the Perinis to the extent permitted by law is noted; and

(4) the Perini defendants' and defendant Maxine Walker Perini's joint motion to dismiss Maxine Walker Perini is GRANTED; defendant Maxine Walker Perini is DISMISSED as a party defendant and the caption is AMENDED accordingly.